IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY -5 2008

COURT OF APPEALS
DIVISION TWO

|   |   |   |
|---|---|---|
| MARCO C., | ) | |
| | ) | 2 CA-JV 2007-0096 |
| Appellant, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| SEAN C. and COLLEEN C., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. B 19290

Honorable Theodore J. Knuck, Judge

AFFIRMED

The Shanker Law Firm, PLC
  By Tamera C. Shanker                                                 Tempe
                                                    Attorney for Appellant

Steven M. Ellsworth, PC
  By Steven M. Ellsworth                                               Mesa
                                                    Attorney for Appellees

H O W A R D, Presiding Judge.

¶1        Appellant Marco C., the putative father of Baby G., challenges the juvenile

court's order in the underlying adoption proceeding declaring unnecessary Marco's consent

to the child's adoption by appellees Sean C. and Colleen C. and permitting the adoption to proceed over his objection. We conclude the court correctly found Marco failed to comply with the requirements of A.R.S. § 8-106.01 and thus did not err.

¶2 Sylvia G. gave birth to Baby G. on May 14, 2007. Before the child was born, Sylvia and Marco had communicated with one another through electronic mail (email). Based on those emails, at least as early as March 2007, Sylvia and Marco had acknowledged Sylvia's pregnancy and both believed Marco was likely the biological father of the child Sylvia was carrying. Nevertheless, on May 17, 2007, Sylvia signed an affidavit in which she avowed her husband Benjamin was the biological father of Baby G. That same day, Sylvia and Benjamin executed consents to place Baby G. for adoption, relinquishing their parental rights.

¶3 On June 14, 2007, thirty-one days after Baby G. was born, Marco filed a notice of claim of paternity with the Arizona Department of Health Services, claiming to be Baby G.'s biological father. On August 22, Sean and Colleen served Marco with a Potential Father Notice, as required by A.R.S. § 8-106(G). Marco filed a petition to establish paternity of Baby G. in Maricopa County Superior Court on September 19. On October 5, Sean and Colleen filed a petition to adopt Baby G. in Pima County Juvenile Court. They alleged, inter alia, that Marco had failed to comply with A.R.S. § 8-106(G)(3) by not serving Sylvia with a copy of the paternity action within thirty days of the date he had been served with the notice to potential father. Sean and Colleen then filed a motion for an order

2

declaring that Marco's consent to their adoption of Baby G. was unnecessary for two reasons: Marco had failed to file the notice of claim of paternity within thirty days of Baby G.'s birth as required by § 8-106.01(B), and he had failed to timely effect service of the paternity complaint in compliance with § 8-106(G)(3) and (J). Marco filed a combined notice of intent to contest the adoption of Baby G., a motion to vacate the adoption hearing that had been set on the petition, and a response to Sean and Colleen's motion. The juvenile court refused to vacate or delay the adoption hearing and granted Sean and Colleen's motion after a hearing, finding Marco's consent to Baby G.'s adoption was unnecessary. This appeal followed.

¶4          We will not disturb the juvenile court's order in an adoption proceeding absent an abuse of discretion. *See Leslie C. v. Maricopa County Juv. Court*, 193 Ariz. 134, 135, 971 P.2d 181, 182 (App. 1997). "No abuse exists if evidence in the record supports the court's ruling." *Id*. To soundly exercise its discretion, the court must also correctly apply the law. *See Allen v. Chon-Lopez*, 214 Ariz. 361, ¶ 9, 153 P.3d 382, 385 (App. 2007).

¶5          Section 8-106.01(A) requires a putative father who wishes to receive notice of and participate in adoption proceedings relating to a child he believes is his to "file notice of a claim of paternity and of his willingness and intent to support the child to the best of his ability with the state registrar of vital statistics in the department of health services." Section 8-106.01(B) permits a putative father to file the notice before the child is born but

3

requires that it be filed "within thirty days after the birth of the child." If a putative father fails to file the notice claiming paternity as required by the statute, he "waives his right to be notified of any judicial hearing regarding the child's adoption[,] and his consent to the adoption is not required, unless he proves, by clear and convincing evidence, both . . . [that i]t was not possible for him to file a notice of a claim of paternity" within the required period and that "[h]e filed a notice of a claim of paternity within thirty days after it became possible for him to file." § 8-106.01(E); *see also* § 8-106 (providing circumstances under which father's consent required before child may be adopted).

¶6        Marco does not dispute that he filed his notice on the thirty-first day after Baby G.'s birth. In a cursory fashion, he contends that §§ 8-106 and 8-106.01 "do not afford an unwed father much protection, particularly in the case of newborn adoptions," implying the statutes are constitutionally infirm. Because Marco cites no authority for these propositions and fails to sufficiently develop this argument on appeal, we need not consider it. *See Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, ¶ 22, 158 P.3d 225, 231 (App. 2007). Moreover, because Marco never raised this precise issue below, we may refuse to consider it. *See Romero v. Sw. Ambulance*, 211 Ariz. 200, ¶ 7, 119 P.3d 467, 471 (App. 2005). But this court may, in its discretion, address constitutional arguments raised for the first time on appeal. *See State v. Rodriguez*, 205 Ariz. 392, ¶ 27, 71 P.3d 919, 927 (App. 2003). We choose to address Marco's cursory constitutional challenge to Arizona's putative father registry and the adoption statute, as the latter relates to putative fathers.

**¶7** In *Lehr v. Robertson*, 463 U.S. 248, 264-65 (1983), the United States Supreme Court found New York's paternity registry an appropriate means of accommodating and protecting the existing, yet undeveloped rights of putative fathers. The Court stated, "Since the New York statutes adequately protected [the putative father's] inchoate interest in establishing a relationship with [the child], we find no merit in the claim that his constitutional rights were offended because the family court strictly complied with the notice provisions of the statute." *Id*. at 265. Thus, we find without merit Marco's suggestion that, because he demonstrated his desire to assert his rights and establish a relationship with Baby G. by filing the notice with the registry and by pursuing the paternity action, he should be excused from complying with the terms of the statute or that strict application of its provisions here was unconstitutional.

**¶8** Marco also contends the juvenile court erred when it concluded his consent to the adoption was unnecessary, insisting there was clear and convincing evidence that he fell within the exceptions under § 8-106.01(E).[1] We disagree.

**¶9** "When a statute is clear and unambiguous, we apply its plain language and need not engage in any other means of statutory interpretation." *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 14, 110 P.3d 1013, 1017 (2005); *see also Bilke v. State*, 206 Ariz. 462, ¶ 11,

---

[1]In his reply brief, Marco argues the statute provides no guidance to courts for determining what constitutes clear and convincing evidence for purposes of § 8-106.01(E). We will not address issues raised for the first time in a reply brief. *Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, n.7, 166 P.3d 934, 940 n.7 (App. 2007).

80 P.3d 269, 271 (2003). Section 8-106.01(B) clearly and unambiguously sets a time limit that can be excused only under the limited circumstances prescribed in § 8-106.01(E). The legislature, therefore, has balanced the policy considerations involved and concluded that the theoretical ten-month period between a child's conception and thirty days after the child's birth gives the father an adequate opportunity to file his notice. It has also chosen to severely limit the circumstances in which this period may be extended. Although the result may be harsh when a father misses this deadline, we do not second-guess the legislature's policy decision. *See Diana H. v. Rubin*, 217 Ariz. 131, ¶ 35, 171 P.3d 200, 208 (App. 2007).

**¶10**     Cases from other jurisdictions have strictly applied similar statutes.[2] *See, e.g., Heidbreder v. Carton*, 645 N.W.2d 355, 369-70 (Minn. 2002) (mother's allegedly fraudulent concealment of her location and misrepresentation of intent did not excuse putative father's failure to register timely with father's adoption registry); *Hylland v. Doe*, 867 P.2d 551, 553, 556-57 (Or. Ct. App. 1994) (concluding trial court correctly rejected

---

[2]Marco does not expressly argue that substantial rather than strict compliance with § 8-106.01 should be sufficient and that he substantially complied with the provision, nor does he cite any authority supporting such a standard; therefore, we need not consider it. We note, however, that whether substantial compliance applies is a question of legislative intent. *See Aesthetic Prop. Maint. Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 76, 900 P.2d 1210, 1212 (1995) (whether rule of strict or substantial compliance with statute applies is question of legislative intent); *Wenc v. Sierra Vista Unified Sch. Dist. No. 68*, 210 Ariz. 183, ¶ 10, 108 P.3d 962, 965 (App. 2005); *Town of Miami v. City of Globe*, 195 Ariz. 176, ¶ 14, 985 P.2d 1035, 1040 (App. 1998); *cf. Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, ¶ 6, 152 P.3d 490, 492 (2007) (statutory time limit must be strictly met).

adoption challenge by biological father who failed to comply timely with putative-father-registry statute but had filed paternity action in another state within days of child's birth); *Sanchez v. L.D.S. Social Servs.*, 680 P.2d 753, 755 (Utah 1984) (rejecting biological father's challenge to adoption and finding "of no constitutional importance that [father] came close to complying with" Utah's putative father registry); *In re Adoption of B.B.D.*, 984 P.2d 967, ¶¶ 2-6, 12 (Utah 1999) (holding unmarried, nonresident, biological father lost parental right to or interest in child born in Utah by failing to register with putative-father registry, notwithstanding attempts to register with Washington's putative-father registry); *Beltran v. Allan*, 926 P.2d 892, 895-96, 898 (Utah Ct. App. 1996) (finding trial court properly entered summary judgment against biological father who failed to register with Utah's putative-father registry to obtain custody of child born in Utah despite his having filed paternity action in California weeks before child's birth). Accordingly, unless Marco's situation falls within the narrow statutory exception, he cannot be excused from failing to file the notice within the prescribed period.

¶11 The juvenile court implicitly, and correctly, acknowledged the standard it was required to apply before it granted Sean and Colleen's motion and ordered that Marco's consent to Baby G.'s adoption was unnecessary. It noted, "as soon as [Marco] learned that the mother planned to place the minor for adoption, he began to investigate what he needed to do and believed he was within the 30 day registry." Nevertheless, as the court correctly found, Marco had failed to file the notice within the prescribed period.

7

¶12 At the hearing on Sean and Colleen's motion, the court acknowledged the result may be harsh, particularly when Marco's notice was late by only one day. But, the court stated, "I think that the Legislature . . . meant for there to be, [and] everybody [to] be able to count on[,] a certain time period that has to be met." The court implicitly found Marco had not sustained his burden of establishing a statutory excuse for his untimeliness.[3] As with other questions of fact, it was for the court to determine in the exercise of its discretion whether Marco had shown by clear and convincing evidence that it had not been possible for him to file the notice of claim of paternity within thirty days of Baby G.'s birth. *Cf. In re Charles B.*, 194 Ariz. 174, ¶ 7, 978 P.2d 659, 662 (App. 1998) (appellate court reviews juvenile court's determination of juvenile's incompetency to stand trial for abuse of discretion). As discussed below, on this record, we cannot say the court abused its discretion.

¶13 Marco maintains that he immediately began to look into what he had to do to assert his rights once he learned from Sylvia in an email she had sent him on May 27 that

---

[3]In his reply brief, Marco contends the juvenile court failed to make this finding expressly, arguing the court "[d]id [n]ot [a]pply the [p]rovisions of A.R.S. § 8-106.01(E) in its [r]uling." But both the minute entry, in which the court implicitly acknowledged the standard it was to apply, and the court's comments at the hearing permit the inference the court applied the statute in its entirety. The statute does not require the court to state its findings on the record. We may generally infer findings of fact necessary to sustain a court's order. *See Johnson v. Elson*, 192 Ariz. 486, ¶ 11, 967 P.2d 1022, 1025 (App. 1998). And, finally, Division One of this court recently concluded that, when a party fails to object below to "the alleged lack of detail in the juvenile court's findings," the issue is deemed waived when raised for the first time on appeal, as it is here. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, ¶ 21, 153 P.3d 1074, 1081 (App. 2007).

she had placed Baby G. for adoption. He argued below that he could not contact her other than through email and that he "[d]id not know exactly where she was living." And, he contended, once he learned about the registry, he filed the notice, believing then that he had timely filed it. He further asserts Sylvia "not only consciously withheld the child's due date, but misled [him] as to her intentions with regard to the rearing of their child." He adds, "The birth mother engaged in this subterfuge in full knowledge and awareness that [he] was willing and able to raise his child."

¶14 Even assuming, without deciding, that the record supports Marco's contentions about Sylvia's conduct, those facts still do not show it had been impossible for Marco to file the notice with the department of health services within the required period. *See In re Adoption of Reeves*, 831 S.W.2d 607, 609-10 (Ark. 1992) (finding mother's perjury in failing to identify putative father did not justify his failure to register in putative-father registry); *In re Adoption of O.J.M.*, 687 N.E.2d 113, 118 (Ill. App. Ct. 1997) (finding mother's misrepresentation during adoption proceedings that another man was child's father did not excuse biological father's failure to comply with requirements of paternity-registration statute); *In re Adoption of W.*, 904 P.2d 1113, 1115, 1122 (Utah Ct. App. 1995) (finding father's consent to adoption unnecessary because he failed to file timely notice of paternity even though mother had falsely denied knowing identity of child's biological father). Nor does Marco's apparent interest in asserting his rights and establishing paternity

9

explain why it had not been possible for him to register timely and does not excuse him from complying with § 8-106.01(B).

¶15     The record, which includes copies of the emails Marco attached to his response to Sean and Colleen's motion, establishes instead that, as we previously stated, by at least the end of March, well before Baby G. was born, Marco knew Sylvia was pregnant and, at the time, both of them believed Marco was most likely the biological father. Regardless of whether Sylvia had intended to keep the child or relinquish her rights and place the child for adoption, nothing she did explains the untimeliness of Marco's notice. He could have filed the notice at any time before the child was born, and he did not sustain his burden of proving he could not possibly have filed it within thirty days of Baby G.'s birth.

¶16     Marco also appears to suggest the juvenile court abused its discretion by finding it was in the child's best interest for the adoption to proceed without his consent. But, because § 8-106.01 expressly permitted the court to proceed with the adoption without Marco's consent, we can hardly say the court abused its discretion. No finding of best interest was required before the court could conclude Marco's consent to the adoption of Baby G. was not required.

¶17     In any event, Marco's assertion that adopted children invariably suffer a loss that could be avoided by permitting an interested father like him to intercede is nothing more than an expression of Marco's philosophical opposition to adoptions in general. This

assertion does not negate the finding the juvenile court made in its December 2007 order, entered after a hearing, that adoption of Baby G. by Sean and Colleen was in the child's best interest. The finding of best interest need only be supported by a preponderance of the evidence, *see* § 8-115(B), and nothing before us establishes the court's finding was not supported by reasonable evidence. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 4, 53 P.3d 203, 205 (App. 2002) (juvenile court's order will not be disturbed so long as reasonable evidence support's court's factual findings). Indeed, in its November 26, 2007 order granting Sean and Colleen's motion, the court noted they had insisted the adoption hearing proceed as scheduled. In response, the court implicitly found it was in the child's best interest to proceed, noting Sean and Colleen had pointed out that "[t]he minor has been in the placement for over six months and is bonded to the family." Again, Marco does not refute this finding.

¶18 Because Marco failed to file a timely notice of claim of paternity in accordance with § 8-106.01, his consent to the adoption of Baby G. by Sean and Colleen was not required, and we need not consider the arguments concerning his untimely service of the paternity action under § 8-106(J). The juvenile court's November 26, 2007 order granting Sean and Colleen's motion is affirmed.

_____
JOSEPH W. HOWARD, Presiding Judge

11

CONCURRING:


_____
JOHN PELANDER, Chief Judge



_____
J. WILLIAM BRAMMER, JR., Judge