NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

VICTOR LEDO, *Petitioner/Appellant*,

*v.*

IRMA LEDO, *Respondent/Appellee*.

No. 1 CA-CV 14-0331 FC
FILED 5-7-2015

Appeal from the Superior Court in Maricopa County
No.  FC2011-000009
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Victor Ledo, Mesa
*Petitioner/Appellant*

Irma de la Cruz Ledo, Apache Junction
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Kenton D. Jones joined.

---

**K E S S L E R**, Judge:

¶1        Victor Ledo ("Husband") appeals from the superior court's post-judgment order affirming his obligation to pay Irma Ledo ("Wife") $35,534 as reimbursement for funds he received from the sale of their community property. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Husband filed a petition for dissolution of marriage in January 2011. Prior to trial, at a settlement conference in May 2013, all pending issues were resolved under a Rule 69 agreement. *See* Ariz. R. Fam. L. P. 69. The current dispute arises from the disposition of $127,000 in net proceeds received from the sale of the parties' California residence in 2009. Husband transferred $78,500 of those funds into his personal savings account. Pursuant to the Rule 69 agreement, Husband was to receive credit against the proceeds if he could provide documentation to support his claim that he had used all or part of those proceeds to satisfy community debts:

> Within forty-five days, [Husband] shall provide to [Wife] an allocation as to what, if any, of those funds were spent on the community and how those funds were spent. The parties agree that whatever amount was spent on the community, [Husband] will receive credit for having spent on the community and whatever funds are unallocated or not spent on the community [Wife] will be entitled to reimbursement for, for her portion of the community share of those funds. *[Husband] will provide bank statements, receipts, credit card receipts and whatever other tangible receipts he can provide with respect to those expenditures.*

(Emphasis added.) Although the superior court found his submission of expenses was untimely and disorganized, it admitted and considered the accounting documentation in the interests of justice, so as not to prejudice, or afford a windfall to, either party. The court thereafter ordered Husband

to pay Wife an equalization payment of $59,784.97, which represented 50% of the unallocated funds from the California property sale proceeds after offsets, but allowed for Father to file simultaneous motions to correct mistake, Ariz. R. Fam. L. P. 85, and to appoint a Special Master, Ariz. R. Fam. L. P. 72, if he desired further consideration of the issue.

¶3　　　At Husband's request, the superior court appointed a Special Master, and granted him full authority to make recommended findings and orders regarding the financial accounting of the community funds and whether Husband was entitled to any additional reduction of his equalization payment. *See* Ariz. R. Fam. L. P. 72. In the meantime, Husband's 50% interest in the proceeds from the sale of other community properties was held in escrow pending resolution of the dispute. The Special Master held an evidentiary hearing in January 2014, and after hearing testimony and reviewing the records, found that Husband failed to meet his burden of proving he was entitled to any additional offset. As a result, the Special Master recommended releasing all the funds in escrow to Wife.

¶4　　　After the evidentiary hearing, Wife filed an application for attorneys' fees and costs. In her request, Wife also sought sanctions against Husband for failure to disclose certain requested documents. The Special Master denied Wife's request:

> [P]ursuant to an analysis of existing orders in this case and balancing the parties' finances it does not appear to the Special Master that an award of attorney's fees and costs . . . would be appropriate.
>
> In her request for attorney's fees and costs [Wife] seeks a sanction against [Husband] for the failure to disclose requested documents pertaining to this controversy. The Special Master has recommended that [Husband] not receive any further credits. The Special Master has recommended that the remaining funds held in escrow be awarded to [Wife]. The Special Master's recommendation is based upon [Husband]'s failure to provide the documentary evidence to support his claim. In the opinion of the Special Master that is sanction enough for this matter.

¶5　　　Husband filed an objection to the Special Master's report and recommendations, arguing there was no legal authority to deny Husband credit for the documented expenses or to impose a sanction. The superior

court found the record supported the Special Master's recommendations and awarded Wife $33,008.97.[1]  In addition, the court found that Husband misconstrued the language in the Special Master's report, and that no sanction was actually imposed:

> [In] the *Special Master Report*, the Special Master wrote: "In the opinion of the Special Master that is sanction enough for this matter."  [Husband] construes this language to mean that the award of the remaining funds in escrow to [Wife] is a sanction against him.  Although the Court views the use of the term "sanction" as an unfortunate choice of words, particularly for a self-represented litigant such as [Husband], the Court finds that [Husband] has taken this out of context and misconstrued the ruling. . . . The Special Master considered the equities of the situation, and concluded that it would not be equitable for [Wife] — who was receiving the remaining funds in escrow, pending Court approval — to receive an additional award of attorneys' fees.  In this context, the Court finds that the Special Master's ruling simply concluded that it was neither fair nor equitable for [Husband] to pay the attorneys' fees and costs of [Wife].  The Special Master did not impose a "sanction" against [Husband] in the form of not allowing any additional offsets.

¶6            Husband timely appealed the final order.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1)[2] and -2101(A)(1).

## ISSUES AND STANDARD OF REVIEW

¶7            On appeal, Husband argues that the superior court abused its discretion by not enforcing the Rule 69 agreement and imposing a sanction against him as recommended by the Special Master.  We view evidence in the light most favorable to upholding the decision, *Krisko v. John Hancock Mut. Life Ins. Co.*, 15 Ariz. App. 304, 305, 488 P.2d 509, 510 (1971), and "will not disturb a trial court's factual findings unless clearly erroneous," *Hrudka v. Hrudka*, 186 Ariz. 84, 92, 919 P.2d 179, 187 (App. 1995), *superseded by statute*

---

[1] After a December 2013 hearing, $35,534.97 remained in escrow.  Husband received credit for mortgage payments, bills, and expenses, totaling $2,526.  The remainder, $33,008.97, was paid to Wife.

[2] Absent material revisions from the relevant date, we cite a statute's current version.

*on other grounds as stated in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8, 333 P.3d 818, 821 (App. 2014). "A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion, it reaches a conclusion without considering the evidence, it commits some other substantial error of law, or 'the record fails to provide substantial evidence to support the trial court's finding.'" *Flying Diamond Airpark, L.L.C. v. Meienberg*, 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App. 2007) (quoting *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982)). "Moreover, we review legal issues and the application of law *de novo*." *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9, 286 P.3d 1095, 1099 (App. 2012).

## DISCUSSION

I.     **The Superior Court Did Not Err In Its Enforcement of the Rule 69 Agreement.**

¶8     Husband first argues that the superior court erred in failing to enforce the Rule 69 agreement and exceeded its authority in denying him credit for all of his documented expenses. Husband essentially argues that because he submitted some documentation, he complied with the Rule 69 agreement and is automatically entitled to a reduction of his equalization payment. We disagree.

¶9     Pursuant to the Rule 69 agreement, Husband was to receive credit against the net proceeds received from the sale of the parties' California residence if he could provide evidence that the money was spent on the community. *See supra* ¶ 2. Although Husband provided the superior court and Special Master with voluminous records of payments on community expenses, the documents detail expenditures made from the parties' joint checking account. Thus, as the court concluded, Husband did not provide evidence that he paid any of the $78,500 deposited into his personal savings account on community expenditures:

> [Husband] did show expenditures on community expenses. However, the expenditures for community expenses came from the parties' joint checking account . . . . What this means is that [Husband] has offered voluminous support to document matters which are not in dispute and for which the Court and Mother already were giving him credit — namely, the community expenditures out of the parties' joint checking account. What [Husband] has not done with his voluminous documents is demonstrate that he paid all of the $78,500 — monies that he deposited into his personal savings account —

for community expenditures. The *Special Master Report* noted that "[Husband] did not provide the money market statements." Without such documentary evidence, [Husband] did not prove by even a preponderance of the evidence that there was a connection, or nexus, between the community bills he paid and the $78,500 in community funds that he transferred to his own savings account.

Based on this record, the superior court did not err in agreeing with the Special Master's report that Husband failed to meet his burden of proof.

## II.    **The Superior Court Did Not Sanction Husband.**

¶10        Husband next argues the superior court abused its discretion by imposing a $33,534 sanction against him pursuant to a purported recommendation by the Special Master.

**¶11**        As the superior court discussed, although the Special Master used the phrase "that is sanction enough for this matter" in his report, when viewed in context, it is clear that Wife's request for sanctions was, in fact, denied.  *See supra* ¶¶ 4-5.[3]  Accordingly, there was no abuse of discretion.

## CONCLUSION

**¶12**        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[3] In his reply brief, Husband argues that the court erred in denying him $49,500 in credit for mortgage payments made between January 2011 and October 2013.  "We will not address issues raised for the first time in a reply brief."  *Marco C. v. Sean C.*, 218 Ariz. 216, 219 n.1, ¶ 8, 181 P.3d 1137, 1140 n.1 (App. 2008).  In addition, Husband suggests the superior court judge erred in failing to disclose his working relationship with the Special Master.  Because Husband failed to develop this argument, we consider it abandoned.  *See* ARCAP 13(a)(6) (requiring the appellant's briefs to "concisely and clearly set forth . . . [a]n argument which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on"); *see also DeElena v. S. Pac. Co.*, 121 Ariz. 563, 572, 592 P.2d 759, 768 (1979).