IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DAVID C., KIM C., *Appellants*,

*v.*

ALEXIS S., A.C., *Appellees*.

No. 1 CA-JV 14-0311
FILED 8-27-2015

---

Appeal from the Superior Court in Maricopa County
No. JA47249
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellants*

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellee Alexis S.*

Law Office of Kennedy & West, Phoenix
By Jean W. West
*Counsel for Appellee A.C.*

## OPINION

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Patricia K. Norris and Judge Patricia A. Orozco joined.

**C A T T A N I**, Judge:

¶1        David C. and Kim C. (collectively, "Adoptive Petitioners") appeal the juvenile court's ruling granting Alexis S. ("Biological Father")'s motion to set aside their adoption of A.C.  Although Biological Father did not file a notice of claim of paternity with Arizona's putative fathers registry, *see* Ariz. Rev. Stat. ("A.R.S.") § 8-106.01,[1] he timely filed and actively pursued a paternity action after Adoptive Petitioners served notice of the adoption proceedings.  Accordingly, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Biological Father began a relationship with A.C.'s birth mother ("Biological Mother") in October 2012, and they moved in together two months later.  In January 2013, the couple learned that Biological Mother was pregnant.  In early March, however, Biological Mother moved out. Biological Father tried to stay in touch with her and asked for updates about the pregnancy, but Biological Mother cut off all contact within days of leaving.  Biological Father contacted Biological Mother's relatives to inquire about the pregnancy and stated he was "not letting it go," but the relatives did not respond.

¶3        A.C. was born on September 23, 2013.  Biological Mother signed an affidavit of paternity falsely stating that A.C.'s biological father was unknown, and four days after the birth, she also signed a consent to adoption in favor of Adoptive Petitioners.  A.C. was released from the hospital into Adoptive Petitioners' care.

¶4        On October 8, 2013, one of Biological Mother's relatives informed Biological Father of A.C.'s birth, and another relative informed him of Biological Mother's address in Las Vegas, Nevada later that month. Meanwhile, Adoptive Petitioners requested a search of Arizona's putative

---

[1]        Absent material revisions after the relevant date, we cite a statute's current version.

fathers registry; the Office of Vital Records returned a certification stating that, as of October 23, 2013 (30 days after A.C.'s birth), there were no notices of claims of paternity associated with A.C.

¶5 On November 7, 2013, Biological Father visited Biological Mother in Nevada and asked about the child. Biological Mother refused to disclose any information about A.C. other than falsely stating she had given the child to another man who had proven paternity. Biological Father checked with several Nevada hospitals, but did not find any information about A.C.'s birth.

¶6 Less than one week later, on November 12, 2013, Adoptive Petitioners filed a petition to adopt A.C. Given Biological Mother's affidavit stating she did not know the name of any potential father and in the absence of any putative father filing, Adoptive Petitioners served a John Doe notice of the pending adoption by publication beginning on November 25, 2013.

¶7 That same day, without knowing about the John Doe notice, Biological Father filed a paternity suit in family court seeking a finding of paternity and custody of the child. *See* A.R.S. tit. 25, ch. 6, art. 1. Biological Father's petition listed as "unknown" the child's name, address, and place of birth, and listed her date of birth simply as "September 2013." Biological Father personally served Biological Mother two days later, but she never informed Adoptive Petitioners of the paternity suit. On January 6, 2014, Biological Father sought a default judgment after Biological Mother failed to respond to the petition, but the family court continued the case on the inactive calendar because the petition did not contain sufficient information about the child.

¶8 On January 15, 2014, the juvenile court granted A.C.'s adoption by Adoptive Petitioners. Adoptive Petitioners had not searched family court paternity filings, and there is no indication that they knew of Biological Father's paternity suit.

¶9 On February 26, 2014, Biological Father learned of the John Doe notice by publication, and he immediately filed a request for information in the adoption case. He also used the information in the John Doe notice to amend his petition in the paternity case. In the following months, Adoptive Petitioners intervened in the paternity case and moved to dismiss, Biological Father intervened in the adoption case and moved to set aside the adoption, and the juvenile court took temporary jurisdiction over the paternity case pending resolution of the motion to set aside the

adoption. Paternity testing showed that Biological Father was in fact A.C.'s father.

¶10 After briefing and argument, the juvenile court granted Biological Father's motion to set aside the adoption and ordered the parties to initiate A.C.'s transition to his care. The court acknowledged that Biological Father had not filed a notice of claim of paternity with the putative fathers registry as required by A.R.S. § 8-106.01. Nevertheless, the court concluded that, because Biological Father had filed a paternity action and timely served Biological Mother while the adoption was pending, he was entitled to notice of the adoption proceedings under A.R.S. § 8-111(5), and that the lack of this statutory notice violated his due process right to seek to parent his child and deprived the court of jurisdiction to issue the adoption order.

¶11 Adoptive Petitioners timely appealed from the order setting aside the adoption, and we have jurisdiction under A.R.S. § 12-2101(A)(2).

## DISCUSSION

¶12 We generally review a juvenile court's decision in an adoption proceeding for an abuse of discretion. *Marco C. v. Sean C.*, 218 Ariz. 216, 218, ¶ 4, 181 P.3d 1137, 1139 (App. 2008). We similarly review an order setting aside a judgment for an abuse of discretion, although we review de novo a decision to set aside a judgment as void. *See Martin v. Martin*, 182 Ariz. 11, 14–15, 16, 896 P.2d 11, 14–15, 16 (App. 1994); *Duckstein v. Wolf*, 230 Ariz. 227, 231, ¶ 8, 282 P.3d 428, 432 (App. 2012). We review de novo the interpretation of statutes and rules. *Kent K. v. Bobby M.*, 210 Ariz. 279, 282 n.6, ¶ 8, 110 P.3d 1013, 1016 n.6 (2005).

¶13 Under A.R.S. § 8-106(F)–(G), the mother of a child placed for adoption must provide for filing with the court a notarized affidavit listing all potential fathers; each potential father must then be served with notice of the adoption proceedings. Because Biological Mother falsely swore that A.C.'s father was unknown, however, the notice of the adoption proceedings required by A.R.S. § 8-106(G) was served on Biological Father only by publication as a John Doe notice. That notice, as required by statute, informed any potential father that he had a right to withhold consent to the adoption, and that if he chose to withhold consent, it was his responsibility to initiate and serve Biological Mother with a paternity action within 30 days of completion of service of the John Doe notice, and then to proceed to a judgment of paternity. A.R.S. § 8-106(G), (I). As required by the statute, the notice also warned the potential father that if he failed to file a paternity

action and serve the biological mother as required, he would be "bar[red] . . . from bringing or maintaining any action to assert any interest in the child." *See* A.R.S. § 8-106(G)(7), (I)(8); *see also* A.R.S. § 8-106(J) (stating that failure to timely file and serve a paternity action "waives [a potential father's] right to be notified of any judicial hearing regarding the child's adoption or the termination of parental rights and his consent to the adoption or termination is not required").

¶14 Even though he did not actually know of the John Doe notice until months later, Biological Father complied with the statutory requirements set forth in that notice by filing a paternity action the same day the notice was published and serving Biological Mother two days later, well within the 30-day time limit. He diligently pursued the paternity action, and although he had not obtained a judgment of paternity by the time the adoption was finalized, his inability to do so cannot fairly be attributed to his actions, but rather to Biological Mother's refusal to give him any information about the child. In short, Biological Father did everything required under § 8-106(G) to assert his parental rights.

¶15 Although Adoptive Petitioners were not aware of the paternity suit, it was not Biological Father's obligation to inform them. *See* A.R.S. § 8-106(G) (requiring father to file and serve a paternity suit, but making no mention of contacting adoptive petitioners). Biological Mother had actual knowledge of both the paternity suit and the adoption proceedings. Her false swearing in the affidavit of paternity, and her failure to inform Adoptive Petitioners that she had been served with a paternity action should not be countenanced and should not be deemed to have expanded Biological Father's responsibilities. Adoptive Petitioners understandably relied on the absence of any filing relating to A.C. in the putative fathers registry, but they could have searched paternity filings and, had they done so in this case, likely would have found Biological Father's paternity action (naming Biological Mother as the Respondent) filed in the same county as the adoption proceedings. *See* A.R.S. § 8-111(5) (requiring service of notice of any adoption hearing on "[a]ny person who has initiated a paternity action" under Arizona law); Ariz. R.P. Juv. Ct. 83(A)(3) (requiring that, prior to finalizing an adoption, an adoptive petitioner must file an affidavit certifying that paternity filings have been searched "if applicable").

¶16 Adoptive Petitioners acknowledge that Biological Father "took certain actions," but argue that his failure to file a notice of claim of paternity with Arizona's putative fathers registry invalidated his efforts to assert his parental rights through a paternity action. We disagree because

the putative fathers registry supplements and does not supplant a father's right to pursue a paternity action.

¶17 The putative fathers registry allows "[a] person who is seeking paternity, who wants to receive notice of adoption proceedings and who is the father or claims to be the father of a child" to independently ensure that he will receive notice of adoption proceedings without relying on the biological mother's statement (or even, as here, outright lies) regarding the child's paternity. *Compare* A.R.S. § 8-106.01(A) (self-reporting putative fathers) *with* A.R.S. § 8-106(F) (biological mother's statement of potential fathers). The registry must be searched before an adoption can proceed, *see* A.R.S. § 8-106.01(H); Ariz. R.P. Juv. Ct. 83(A)(3)–(4), and each individual who timely files a notice of claim of paternity must be served with the notice specified in § 8-106(G), *see* A.R.S. § 8-106.01(G). The registry thus supplements the notice provisions of § 8-106 as part of a comprehensive scheme to ensure that biological fathers receive timely notice of potential adoptions.

¶18 Adoptive Petitioners rely on a single provision of the putative fathers registry statute stating that a putative father who fails to file with the registry within 30 days after the child's birth "waives [the putative father's] right to be notified of any judicial hearing regarding the child's adoption and his consent to the adoption is not required," absent a showing of impossibility to comply with the registry requirements. A.R.S. § 8-106.01(E); *see also Marco C.*, 218 Ariz. at 219–20, ¶¶ 9–10, 181 P.3d at 1140–41. But the statute does not vitiate the rights set forth in § 8-106(G).

¶19 Moreover, unlike other provisions in the adoption statutes, § 8-106.01(E) does not restrict a biological father's right to bring a paternity action and thus become the child's legal father as reflected in § 8-106(A)(2)(c). *See*, *e.g.*, A.R.S. § 8-106.01(G) (requiring timely-registering putative father to file a paternity action within 30 days after service of § 8-106(G) notice of the adoption proceedings or be "barred from bringing or maintaining any action to assert any interest in the child"); A.R.S. § 8-106(G)(7) (stating that a potential father's failure to file, serve, and proceed to judgment in a paternity action after receiving § 8-106(G) notice "bars the potential father from bringing or maintaining any action to assert any interest in the child"). Accordingly, once a potential father receives service of notice of the adoption proceedings—even if only via John Doe notice by publication—and complies with the requirements enumerated in that notice by timely filing, serving, and diligently pursuing a paternity action, the § 8-106.01(E) waiver provision no longer applies.

**¶20** We recognize that in *Marco C.*, a different panel of this court reached a contrary conclusion, holding that registering a notice of claim of paternity one day late rendered a putative father's consent to his child's adoption unnecessary under § 8-106.01(E). 218 Ariz. at 218, 221, ¶¶ 3, 18, 181 P.3d at 1139, 1142. The *Marco C.* court held that the putative father could not be excused from strictly complying with the terms of the registry statute, despite his demonstration of his desire to assert his rights and establish a relationship with the child by filing a notice with the registry (albeit one day late) and by filing a paternity action. *Id.* at 219, ¶ 7, 181 P.3d at 1140.

**¶21** We note that the putative father in *Marco C.* failed to timely serve the paternity action on the mother. Thus, even if he had timely filed with the putative fathers registry, he would have been barred from pursuing the paternity action and establishing paternity. *See* 218 Ariz. at 218, 221, ¶¶ 3, 18, 181 P.3d at 1139, 1142; A.R.S. § 8-106(G)(7). Accordingly, the outcome in *Marco C.* would have been the same even if the court had not relied on the putative fathers waiver provision. Nevertheless, as explained above, we respectfully disagree with the reasoning of *Marco C.* insofar as it holds that filing with the putative fathers registry is a necessary precondition in all cases in which a father asserts his parental rights.

## CONCLUSION

**¶22** Biological Father was served by John Doe publication with § 8-106(G) notice of the adoption proceedings and, within two days, filed and served a paternity action on Biological Mother. He diligently pursued the paternity suit and established that A.C. is his biological child. Under the circumstances, Biological Father retained the right to assert his parental rights under § 8-106(G) notwithstanding his failure to register with the putative fathers registry, and the juvenile court appropriately set aside A.C.'s adoption. Accordingly, we affirm the juvenile court's decision setting aside A.C.'s adoption.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama