ECKERSTROM, Chief Judge,
dissenting.
¶ 66 Due to the dishonest actions of the birth mother and the strategic, self-serving “oversights” of an adoption agency, this court is faced with resolving litigation that now, over twenty months after E.E.’s birth, can have only an unsettling outcome. This court must render a decision that has the practical effect of either: (1) removing E.E. from the only parents and family he has ever known in his young life or (2) depriving a father, who has persistently asserted his desire to parent his child, of any legal status with regard to his son and, in so doing, rewarding unconscionable behavior by the birth mother and adoption agency.
¶ 67 The majority’s scholarly, comprehensive opinion aptly articulates the controlling legal principles that address Frank’s claims and reluctantly rejects them. I join in that well-written opinion in every respect but one.
*204 ¶ 68 The majority and the trial court have correctly found that Frank could not have possibly complied with Arizona’s requirement that he register as a putative father until, at the earliest, August 28, 2014. Both conclude, however, that his failure to file a notice of paternity pursuant to AR.S. § 8-106.01 thereafter constituted a lawful ground to terminate his parental rights pursuant to A.R.S. § 8-533(B)(6). Supra ¶¶ 49-51. But by that time, when Frank’s intention to assert his paternity had been unequivocally demonstrated through a motion in California court, and when Mother Goose had moved in an Arizona court to terminate Frank’s parental rights, any § 8-106.01 filing would have served no purpose whatsoever. At that stage in the proceedings, our legislature could not have intended that a putative father perform a futile and superfluous act to preserve his fundamental right to parent. See Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
¶ 69 Our state requires that putative fathers file a notice of paternity pursuant to § 8-106.01 or risk the termination of their parental rights. § 8-533(B)(6). In so filing, the putative father must both assert his paternity and avow that he possesses the “willingness and intent to support the child.” § 8-106.01(A). That requirement, and the attendant statutory scheme, protects the putative father by assuring that no adoption may occur without the father receiving a procedural opportunity to file a paternity action pursuant to title 25. See A.R.S. §§ 8-106.01(G) (giving father 30 days to file paternity action); 8-106(G) (requiring that each putative father who has registered under § 8-106.01 receive notice alerting him of right to challenge adoption); 25-801 through 25-818 (title governing paternity proceedings). Perhaps most importantly, the registry protects the interests of the child by requiring that any assertions of paternity be made promptly so that the child’s permanent home can be established with minimal delay. See § 8-106.01(G) (putative father to file paternity action within thirty days of § 8-106 notice of adoption).
¶ 70 By the date on which my colleagues agree that § 8-106.01 registration was first possible, each of the legislative purposes of such filing had already been achieved by the process of litigation or previously defeated by the strategic actions of the mother and adoption agency. By August 28, 2014, Frank had filed an action for paternity in California demonstrating his intention and willingness to support the child. Rachel and Mother Goose had thereafter received legal notice of that filing and had reacted by moving, in Arizona court, to terminate Frank’s paternity. Thus, our state court and all potential litigants had been placed on proper legal notice of Frank’s intention to assert his paternity and an Arizona proceeding had been initiated which, properly conducted, would provide Frank a procedural opportunity to defend his parental rights.
¶ 71 Regrettably, the last purpose of § 8-106.01—to assure that any assertions of paternity be resolved in our courts promptly— had not been achieved due to the dishonesty of the mother in failing to list Frank as a potential father and provide prompt notice to Frank of her intent to seek adoption as required under § 8-106(F) and (G). But Frank, who had persistently asserted his desire to parent the child, bore no responsibility for that delay. Nor could a superfluous § 8-106.01 filing of a notice of paternity thereafter remedy the delay. At that stage in the proceedings, the sole effect of Frank registering as a putative father pursuant to § 8-106.01 would be to provide notice that he was asserting his parental rights—a sine qua non of the Arizona action to terminate Frank’s paternity, which had already commenced. During oral argument, Mother Goose conceded that Frank’s failure to comply with § 8-106.01 after August 28, 2014, did not cause any further delay in the proceedings.
¶ 72 The majority maintains that Frank’s actions, in filing the claim of paternity in California and promptly contesting Arizona’s motion to terminate, can be viewed only as substantial compliance with the requirements of § 8-106.01 and that strict compliance was still required. Supra ¶ 50. But whether a particular legislative scheme requires substantial or strict compliance is a question of legislative intent. See Marco C. v. Sean C.,
*205 218 Ariz. 216, n. 2, 181 P.3d 1137, 1140 n. 2 (App.2008) (citing Arizona cases so holding). I agree there is sound logic in requiring strict compliance with time deadlines designed to protect the permanency interests of the child at the expense of an ambivalent and dilatory putative father, a clear legislative purpose of § 8-106.01. See id. ¶ 9. But I can fathom no legislative purpose at all in similarly requiring a father to file a functionally superfluous notice when, as here, litigation to clarify his paternal rights has already commenced with full notice to all parties. See David C. v. Alexis S., 238 Ariz. 174, ¶¶ 16-21, 358 P.3d 595, 599 (App.2015) (where father has timely filed paternity action, compliance with § 8-106.01 is unnecessary; “the putative fathers registry supplements and does not supplant a father’s right to pursue a paternity action”); cf. Owens v. City of Phoenix, 180 Ariz. 402, 409, 884 P.2d 1100, 1107 (App.1994) (excusing failure to exhaust administrative remedies based on futility). To require strict compliance under the circumstances here would transform § 8106.01 into nothing more than a “pitfall for the unwary.” Nielson v. Patterson, 204 Ariz. 530, ¶ 13, 65 P.3d 911, 914 (2003). In the absence of any statutory language expressly compelling another result, we should not assume from legislative silence that our legislature intended such an absurd and unjust result. See State v. Affordable Bail Bonds, 198 Ariz. 34, ¶ 13, 6 P.3d 339, 342 (App.2000) (“ ‘Statutes must be given a sensible construction that accomplishes the legislative intent and which avoids absurd results.’ ”), quoting Ariz. Health Care Cost Containment Sys. v. Bentley, 187 Ariz. 229, 233, 928 P.2d 653, 657 (App.1996).
¶ 73 Therefore, under all the circumstances of this case, Frank’s failure to file a superfluous notice of paternity pursuant to § 8-106.01 should not constitute grounds for terminating his parental rights. I join the well-reasoned majority opinion in all other respects.