NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO L.S., W.S., and
G.S.

No. 1 CA-JV 24-0103

FILED 11-26-2024

Appeal from the Superior Court in Maricopa County
No. JS21995
The Honorable Christopher Whitten, Judge

**AFFIRMED**

COUNSEL

Katie S., Buckeye
*Appellant*

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in
which Judge Anni Hill Foster and Judge Angela K. Paton joined.

**B A I L E Y**, Judge:

¶1        Katie S. ("Mother") appeals the superior court's order denying termination of the parental rights of Tyler S. ("Father") to L.S., W.S., and G.S., born in 2010, 2011, and 2013, respectively. Because Mother has shown no error, we affirm the order.

## FACTS AND PROCEDURAL HISTORY

¶2        We review the facts in the light most favorable to upholding the superior court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶3        Mother and Father met in 2009 and lived together as an unmarried couple in Washington State. As L.S., W.S., and G.S. were born and grew older, Mother grew increasingly concerned about the children's health and safety under Father's care. These concerns intensified after L.S. was diagnosed with Type I diabetes in 2014, as Father failed to monitor L.S.'s blood sugar, refused to give L.S. insulin, and threatened to remove L.S.'s insulin pump.

¶4        By 2015, Mother established a separate residence. After Mother moved out, she initially shared parenting time and decision making with Father, but later was granted sole legal decision making.

¶5        In 2016, G.S. was also diagnosed with Type I diabetes. In 2018, the Washington superior court granted Mother's petition for modification and relocation to Arizona.

¶6        In a 2019 parenting plan, the Washington superior court granted Mother's petition to limit Father's contact with the children. In its findings, the court noted that when the diabetic children were with Father, there were "far too many" instances when their blood sugar levels significantly exceeded acceptable levels. The plan limited Father to non-overnight parenting time for two weekends per month, with visits taking place in Arizona, and allowed Father to make two 30-minute video calls per week.

¶7        After Mother and the children relocated to Arizona, Father consistently called the children twice a week, with each call lasting about five minutes. Father came to Arizona to visit the children several times a year until October 2022, and he visited once more in March 2024. Between 2019 and 2021, Father occasionally sent gifts to the children. Father made several child support payments after the relocation, but he continued to owe an outstanding balance that reached over $34,000 by mid-2023, causing the Washington superior court to issue a civil bench warrant for his arrest.

**¶8**             In January 2024, Mother filed a private petition to terminate Father's parental relationship with the children on the grounds of abandonment and neglect.  In a status conference, the Washington superior court relinquished jurisdiction to Arizona to consider the petition.  The Arizona superior court held a contested termination hearing, and at the conclusion of Mother's case, Father moved for judgment as a matter of law as to both termination grounds.  The superior court granted Father's motion, and Mother timely appealed.

**¶9**             Mother also filed a supplemental designation of record, requesting the superior court include certain exhibits in the record transmitted on appeal.[1]  Mother asserted that these exhibits had been marked and offered but not admitted into evidence at the termination hearing.  In fact, while these exhibits had appeared in the superior court's exhibit worksheet, Mother had not offered any exhibits into evidence at the hearing.  After receiving Father's objection, this court stayed Mother's appeal and revested jurisdiction in the superior court to consider Mother's request to supplement the record.  The superior court denied Mother's request, and this court lifted the stay of her appeal.

**¶10**             We have jurisdiction over Mother's appeal under Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1), and Rule 601 of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

**¶11**             On appeal, Mother raises several arguments challenging the superior court's conclusion that she failed to prove Father abandoned the children.  Mother also argues termination would be in the best interests of the children.  Mother makes no argument in her opening brief as to the

---

[1] Mother also requested the superior court exclude certain exhibits from the presumptive record on appeal.  As Father pointed out in his objection, however, these exhibits were neither offered nor admitted into evidence at the termination hearing, and therefore they were not part of the presumptive record on appeal.

neglect ground; accordingly, we do not address it.[2]  *See Marco C. v. Sean C.*, 218 Ariz. 216, 219, ¶ 8 n.1 (App. 2008).

**¶12**　　　　The right to custody of one's children is fundamental.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 11 (2000).  This fundamental right "does not evaporate simply because" the parent has not been a "model" parent.  *Id.* (citation omitted).  To terminate a relationship between a parent and his or her children, the superior court must find at least one statutory ground for termination by clear and convincing evidence.  *Id.* at 249, ¶ 12 (citing A.R.S. § 8-533(B)).  The court must also find by a preponderance of the evidence that termination is in the children's best interests.  *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 7 (App. 2016).

**¶13**　　　　We do not reweigh the evidence on appeal; rather, we defer to the juvenile court with respect to its factual findings because it "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts."  *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, 336, ¶¶ 4, 14 (App. 2004).  We will not disturb the court's ruling absent an abuse of discretion or unless there is no reasonable evidence to support the court's findings.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶14**　　　　Abandonment is defined as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision.  Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

---

[2] Mother suggests in her reply brief that she voluntarily waived her arguments as to the neglect ground at the termination hearing, stating: "The Appellant understood they did not have medical experts to testify . . . at trial and when Appellee objected to the medical neglect, Appellant did not address the medical neglect further during trial."  She adds that she is "not asking the Juvenile or Appellate courts to address if medical neglect occurred."

A.R.S. § 8-531(1). Whether a parent has abandoned his or her child requires an objective analysis of the parent's conduct, not the parent's subjective intent. *Michael J.*, 196 Ariz. at 249, ¶ 18. "What constitutes reasonable support, regular contact, and normal supervision varies from case to case," and thus "questions of abandonment . . . are questions of fact for resolution by the [superior] court." *Id.* at 250, ¶ 20 (citations omitted).

¶15 Mother argues the superior court "imprudently judge[d] the whole five years of previous contact," pointing out that in the fifteen months leading up to her petition, Father's contact with the children consisted only of five-minute phone calls twice a week, devoid of any in-person visits, gifts, or meaningful child support.[3] We interpret this as Mother arguing the court erred in concluding that Father had not abandoned the children. Reasonable evidence, however, supports finding that Father made a continuous effort to stay in touch with the children and remain involved in their lives. We do not reweigh evidence, and Mother has not established that the record before us, viewed in the light most favorable to upholding the court's ruling, compels a finding of abandonment.

¶16 Mother also argues Father failed to provide normal supervision, stating Father "makes a meager effort to have normal supervision of the three minor children and, more often than not, chooses to forgo any normal supervision of the three minor children." In assessing whether Father exercised normal supervision, the superior court was permitted to consider all the circumstances of the case, including Father's physical distance from the children. Considering Father lived in Washington and the children lived in Arizona, the court did not abuse its discretion in finding that Father, despite his lack of in-person contact, had not abandoned the children.

¶17 As the superior court acknowledged at the hearing, "Father didn't have great contact. Didn't—wasn't—honestly, wasn't a great Father, wasn't barely [sic] a good Father." But the court acted within its considerable discretion in declining to terminate Father's fundamental right to parent, and the sparse record transmitted on appeal gives us no basis to disturb the court's ruling.

---

[3] In her opening brief, Mother claims Father paid no child support after 2021. She acknowledges in her reply brief, however, that Father made a $250 payment in December 2022.

**¶18**         Because reasonable evidence supports the superior court's determination as to the abandonment ground, we need not address Mother's arguments concerning whether termination would be in the best interests of the children.

## CONCLUSION

**¶19**         We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV