MITCHELL et ux. *v.* HOUSTLE et ux.

[No. 254, September Term, 1957.]

262

*Decided June 13, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*D. Franklin McGinnis* for the appellants.

*John C. Griffin,* with whom were *Hiram C. Griffin* and *Griffin & Plummer* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

The chancellor decreed that the appellants must cease using a certain sewer pipe that runs under the land of the appellees from the appellants' lot to the public sewer. The appellants and appellees are the owners of contiguous lots in Baltimore City that are bounded on the north by Sulgrave

Avenue; on the east by Lochlea Road; and on the south by South Road. South Road and Sulgrave Avenue are parallel streets. The appellees' lot (unimproved) lies north of the appellants' lot (improved by a dwelling), and has frontage on both Sulgrave Avenue and Lochlea Road; the appellants' parcel lies immediately south of the appellees' land and has frontage on South Road and Lochlea Road.

Both properties were from 1916 until 1947 part of a larger tract under unified ownership. In 1947, the property was divided approximately in half, with the southern portion passing by mesne conveyances to the appellants (Mitchells) and the northern portion, also by mesne conveyances, to the appellees, (Houstles). The lots slope sharply downward to the north, and as a result the sewer line was laid in the bottom of Sulgrave Avenue. There is no sewer line in South Road, as the street level is higher than the ground level of most of the houses on South Road. It was stipulated that the sewer line from the appellants' residence was laid in 1929 when both lots were owned by the same person; and there is nothing in the land records which would show the existence of such an easement. The sewer pipe extended from the appellants' present residence northerly on the appellees' lot to Sulgrave Avenue. As before stated, the lots in question remained under unified ownership until 1947. In February of that year, the then owner conveyed to the predecessor in title of the Mitchells that portion of the whole tract which the Mitchells now own. The first question for our determination is whether, at the time of this conveyance, an easement was created. If this question be answered in the affirmative, we would then be required to answer the further question of whether the easement inured to the benefit of the present owners, the Mitchells. The appellants contend that an implied easement was created for the benefit of the property they now own and they are entitled to the said easement for the purposes of carrying their sewer pipe to the public sewer line. They argue that said easement contained all of the essential characteristics of being continuous, reasonably necessary for the enjoyment of their property, and that it was "visible" as there were two clean-out fittings located on the Houstle lot

that extended from 6 to 8 inches above the ground. The appellants claim further that the appellees were put on notice of said easement by the Plumbing Code of Baltimore City which required clean-outs every 100 feet, the original application with reference to the sewerage for the appellants' property which was in the health department, and also by a statement made by a spectator when the appellees purchased, at public auction in 1956, their portion of the property. The appellees contend that their property is not subject to any implied easement and that they had no notice, actual or constructive, concerning the fact that the sewer line had been laid under their property.

The question as to what easements are, or are not, created by implied grant or implied reservation has been before this Court on many occasions. From a very early date, a distinction has been made between an implied grant and an implied reservation, with the rule being much more strict when called upon to create an easement by implied reservation than to create one by implied grant. *Slear v. Jankiewicz,* 189 Md. 18, 22. In that case Judge Markell, speaking for the Court, at page 23, said:

> "But if during unity of ownership the owner of two properties uses one for the benefit of the other in such manner as would indicate existence of an easement if the properties were owned by different persons, 'then, upon a conveyance of the [dominant] property so used an easement will be granted to the purchaser, provided the use has been such that the easement resulting from it would be of the class known as continuous and apparent, and would be necessary for the reasonable enjoyment of the property conveyed.' "

See also *McConihe v. Edmonston,* 157 Md. 1, where many of the earlier cases are cited and analysed. It will be noted from these cases that the use made of the property must be such that the easement resulting from it would be of the kind known as (1) continuous, (2) apparent, and (3) necessary for the reasonable enjoyment of the property conveyed, de-

termined as of the time of the severance of the tenement. The appellants maintain that they have met the burden of proof placed upon them and shown that the purported easement has all three of the essential qualities just named. We shall lay aside the other two necessary characteristics and confine our discussion as to whether or not it was "apparent."

There are at least two good reasons to support the rule that one of the necessary characteristics of a *quasi* easement, which is to ripen into an easement by implication and pass with a conveyance of the dominant estate, is that it be "apparent." First, the basis of an implied easement is the implied intention of the parties that an easement be created; if the easement be not apparent, it could hardly form the basis for an implied intention to grant the same. Second, if such a *quasi* easement be not visible, it would not come to the knowledge of a prospective purchaser of either the dominant or servient estate, and if an innocent purchaser of a servient estate were required to accept his title subject to easements that were not apparent, it would create chaos in the field of land purchases, and work hardships never contemplated by the law. Cf. *Kelly v. Nagle,* 150 Md. 125, 132.

In the *Nagle* case, *supra,* this Court said (at page 132) that for a *quasi* easement or use to be apparent it "must be visible, or such as would come to the knowledge of a prospective purchaser of either the dominant or servient estate by such an examination of the premises as is ordinarily made by one desiring to purchase." In the *Slear* case, *supra,* 189 Md. at page 24, the rule was stated thus: "An easement is 'apparent' (not necessarily open and notorious) 'if its existence is indicated by signs which must necessarily be seen, or which may be seen or known on a careful inspection by a person ordinarily conversant with the subject.' " The only evidence in the present case with reference to the alleged easement being "apparent" was that there were two clean-out pipes from the sewer pipe across the appellees' property that were about five inches in diameter and extended out of the ground eight to ten inches. The appellees contended the lot was completely covered by weeds and brush, and they did

not discover the clean-out pipes until after their purchase of the property.

The chancellor found that the claimed easement was not "apparent," and we see no good reason to disturb his decision. In *Heatherdell Farms, Inc. v. Huntley Estates,* 130 N. Y. S. 2d 335, the facts were quite similar to those in the instant case. There, the plaintiff claimed an easement by implication to maintain a septic tank and a drainage field on adjoining property owned by the defendant. When the plaintiff's and defendant's properties were in unified ownership, the septic tank and drainage field had been placed upon the defendant's property and thereafter the properties, as in the instant case, were sold to different owners. The top of the septic tank was a concrete slab, twelve by eighteen feet, which was obscured by grass, leaves and underbrush, so that it was unobservable until a person was within about 25 feet thereof. The Court held that there "was nothing so open and visible about these septic tanks and covers over the same as to indicate the claimed servitude to a reasonably prudent purchaser." Another such holding was made by the Court of Appeals of New York in a case that involved facts that were also very similar to those in the case at bar when it decided *Goldstein v. Hunter,* 178 N. E. 675 (N. Y.). See also 3 *Tiffany, Real Property* (3rd ed.), sec. 784; 17A *Am. Jur., Easements,* sec. 95; *Vanderwerff v. Consumers Gas Co.,* 71 A. 2d 809 (Pa. Super.). And compare *Dale v. Bedal,* 25 N. E. 2d 175 (Mass.); *Ricci v. Naples,* 142 A. 452 (Conn.). With the burden of proof being upon the appellants, as it was, to show that the claimed easement was "apparent," we concur with the chancellor that they failed to prove that the claimed easement was visible, or such as would necessarily come to the knowledge of a prospective purchaser by such an examination of the premises as is ordinarily made by one desiring to purchase.

However, the appellants further contend that the appellees had actual knowledge of the purported easement, and they were chargeable with knowledge of the Plumbing Regulations of Baltimore City that require clean-out pipes "every so many feet." If we assume that actual knowledge by the appellees of

the alleged easement would change our ruling herein, the chancellor found as a matter of fact that they did not have actual knowledge thereof, and in this finding we are unable to say he was clearly in error; nor do we know of any statute that provides that the Plumbing Regulations of Baltimore City shall be constructive notice of their provisions. *Finance, etc., Co. v. Defiance Motor Truck Co.,* 145 Md. 94, 101.

The appellants make as their final and unusual contention that the appellees have an adequate remedy at law, in that they have a right to a refund of the purchase price they paid for their property, and their remedy is at law against their grantor. This argument fails from every approach taken to it. The right to this remedy at law would be dependent upon whether a valid easement existed or did not exist. If a valid easement exists, it constitutes a complete defense for the appellants in this suit, and they would have no interest in whether the appellees were entitled to a refund of their purchase money or not. If an easement does not exist, and we hold that it does not, then the appellees would not be entitled to a return of their purchase money from their grantor, so the argument fails from this angle also. Furthermore, the doctrine that equity will grant no relief when there is an adequate remedy at law is limited to cases in which there is an adequate legal remedy against the defendants that are before the court. *Barr v. Roderick,* 11 F. 2d 984 (D. C., N. D. Cal.); *Thorn, etc. v. Citizens Bank of St. Louis,* 59 S. W. 109 (Mo.); *Middletown Bank v. Russ,* 3 Conn. 135, 8 Am. Dec. 164; 21 *C. J., Equity,* p. 51, n. 37; cf. *Jackson's Admin. v. Turner,* 5 Leigh (32 Va.) 119.

*Decree affirmed, with costs.*