228 P.3d 943

**Brian and Margaret LOISELLE, husband and wife, Plaintiffs/Appellees,**

v.

**COSAS MANAGEMENT GROUP, LLC, an Arizona limited liability company; Gene and Suzanne Lines, husband and wife, Defendants/Appellants.**

No. 1 CA–CV 09–0251.

Court of Appeals of Arizona, Division 1, Department E.

April 20, 2010.

---

Carmichael & Powell PC By: David J. Sandoval, Phoenix, Attorneys for Plaintiffs/Appellees.

Evans Dove & Nelson PLC By: Douglas N. Nelson, Trevor J. Fish, Mesa, Attorneys for Defendants/Appellants.

## OPINION

GEMMILL, Judge.

¶1 Appellants Cosas Management Group, LLC, ("CMG") and Gene and Suzanne Lines appeal the trial court's grant of summary judgment in favor of Appellees Brian and Margaret Loiselle. The trial court ordered CMG and the Lineses to pay restitution in the amount of $25,000 to the Loiselles, and it found that CMG and the Lineses were jointly and severally liable. We agree the Loiselles are entitled to summary judgment for $4,000 in restitution, but we determine there are fact questions whether they are entitled to further restitution and whether the Lineses may be jointly and severally liable with CMG. We therefore affirm in part, vacate in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2 We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Estate of Hernandez v. Flavio,* 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997).

¶3 Daniel Verderose was an employee at Brian Loiselle's company. In January 2008, Verderose approached Loiselle with a proposition that Loiselle provide a short-term loan to CMG in the amount of $25,000. He told Loiselle that CMG had agreed to repay the loan, as well as a $10,000 loan fee, within one week. Verderose provided Loiselle with email correspondence, purportedly between Verderose and Gene Lines, the owner of CMG, in which Lines appeared to agree to the terms of the loan. Loiselle decided to make the loan, and on January 28 he issued a check for $25,000 to CMG and authorized its deposit into CMG's bank account.

¶4 In fact, CMG and Verderose had not discussed CMG receiving a loan from Loiselle. The purported email correspondence between Verderose and Lines had been fabricated, and the email address from the correspondence—glcosas@yahoo.com—did not belong to Gene Lines or CMG. Verderose

owed a large sum of money to CMG, and he had told Lines that any money Loiselle deposited into CMG's account should be used to reduce the amount of his outstanding debt to CMG. The $25,000 deposit was applied by CMG to reduce Verderose's debt. And, allegedly based on this payment, CMG allowed Verderose to borrow an additional $21,000 on February 6, 2008.

¶5 Verderose committed suicide later in February 2008. Following Verderose's death, Loiselle sent a letter to CMG demanding repayment of what Loiselle believed was his loan to CMG. CMG responded that the $25,000 Loiselle deposited into its account had been a partial repayment of Verderose's debt, and it asserted that it would not be returning any funds to Loiselle.

¶6 In May 2008, the Loiselles filed a complaint in superior court alleging the $25,000 payment to CMG constituted an unjust enrichment and should be repaid. They also asserted Gene Lines was the alter ego of CMG and should be personally liable for CMG's acts. CMG and the Lineses filed a motion to dismiss the complaint, which the trial court treated as a motion for summary judgment, and the Loiselles cross-moved for summary judgment. CMG and the Lineses argued that Verderose, and not they, should be liable for the $25,000; and that, because CMG had loaned Verderose an additional $21,000 based on the $25,000 payment, it would be inequitable to require CMG to pay the entire $25,000 in restitution. They also argued the Loiselles had not shown any legal basis for holding the Lineses individually liable.

¶7 After oral argument, the trial court granted summary judgment in favor of the Loiselles and against CMG and the Lineses, explaining:

> The court rejects Defendants' contention that Plaintiffs' remedy is against third part[y] Verderose, who, in effect, arranged the financial transaction in question. There is no indication in the record that Plaintiffs, at any time, in placing $25,000 directly into an account of Defendants, believed, should have believed, or had reason to believe that the monies placed in Defendants' ac-

count were for the benefit of Verderose in any fashion.

The court also found CMG and the Lineses were jointly and severally liable. CMG and the Lineses timely appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## ANALYSIS

▪ ¶ 8 We review de novo the trial court's grant of summary judgment and the court's application of the law. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). The availability of equitable relief and equitable defenses is also subject to our de novo review. *See id.* Fashioning an equitable remedy is within the trial court's discretion, and it will not be disturbed on appeal absent an abuse thereof. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 188, ¶ 55, 181 P.3d 219, 235 (App.2008); *see also Marco C. v. Sean C.*, 218 Ariz. 216, 218 ¶ 4, 181 P.3d 1137, 1139 (App.2008) ("To soundly exercise its discretion, the court must also correctly apply the law."). Summary judgment is proper only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990); Ariz. R. Civ. P. 56(c)(1).

### Unjust Enrichment

▪ ¶ 9 The trial court found CMG and the Lineses (hereinafter collectively "CMG") were unjustly enriched. "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 541, ¶ 31, 48 P.3d 485, 491 (App.2002). To recover on a claim for unjust enrichment, a claimant must show "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law." *Mousa v. Saba*, 222 Ariz. 581, 588, ¶ 29, 218 P.3d

1038, 1045 (App.2009). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Harmon v. Harmon*, 126 Ariz. 242, 245, 613 P.2d 1298, 1301 (App.1980).

¶ 10 CMG contends the trial court erred in granting summary judgment on the Loiselles' unjust enrichment claim. It first argues that it was not enriched "unjustly" because it committed no tortious or wrongful act in receiving the money and it had no knowledge that Verderose had dealt fraudulently with the Loiselles. We disagree that these facts preclude the Loiselles from recovering on their unjust enrichment claim.

▪ ¶ 11 Generally, a person who bestows an unsolicited benefit upon another is not entitled to restitution. *Western Coach Corp. v. Roscoe*, 133 Ariz. 147, 154, 650 P.2d 449, 456 (1982); *see also* Restatement (First) of Restitution § 2 (1937) (hereinafter "Restatement").[1] However, a person may be entitled to restitution if the benefit was conferred through mistake or coercion. *See* Restatement § 2 cmt. a. A person who has conferred a benefit through mistake or coercion is not precluded from maintaining an action for restitution merely because the benefit was conferred due to his lack of care. Restatement § 59.

¶ 12 According to the Restatement, a person is entitled to restitution if he mistakenly believes he is party to a contract with another and makes payment to the other based on this mistake. *See* Restatement § 15. Similarly, the Restatement provides that a person who has paid money to another "because of a mistake of fact and who does not obtain what he expected in return is entitled to restitution from the other if the mistake was induced ... by the fraud or material misrepresentation of a person purporting to act as the payee's agent[.]" Restatement § 28.

¶ 13 Loiselle mistakenly believed he was a party to a contract with CMG, and he made payment to CMG based on this mistake. This mistake was induced by the misrepresentations of Verderose, who was "purport-

---

1. "In the absence of law to the contrary, Arizona generally follows the Restatement." *Hunnicutt Constr., Inc. v. Stewart Title and Trust of Tucson Trust No. 3496*, 187 Ariz. 301, 306 n. 6, 928 P.2d 725, 730 n. 6 (App.1996). The parties rely on various sections of the Restatement in their respective appellate briefs, and we rely on the Restatement throughout this opinion.

ing to act as [CMG's] agent." *Id.* Under the above-referenced provisions of the Restatement, the Loiselles may be entitled to restitution even though CMG did not act tortiously or wrongfully in receiving the money and was unaware that Verderose had fraudulently induced Loiselle to deposit the money into CMG's account.[2]

¶ 14 CMG also contends the Loiselles' claim must fail because the Loiselles have an adequate remedy at law by way of a suit against Verderose's estate. We agree that, to bring a successful unjust enrichment claim, a party must show "the absence of any remedy at law." *Mousa,* 222 Ariz. at 588, ¶ 29, 218 P.3d at 1045. The legal remedy, however, must be against the same person from whom relief in equity is sought. *See, e.g., Hill v. Hill,* 185 Kan. 389, 345 P.2d 1015, 1025 (1959) ("The existence of a remedy at law does not deprive equity of jurisdiction unless such remedy is clear, adequate and complete. Such remedy at law … must exist against the same person from whom the relief in equity is sought."); *Mitchell v. Houstle,* 217 Md. 259, 142 A.2d 556, 560 (1958) ("[T]he doctrine that equity will grant no relief when there is an adequate remedy at law is limited to cases in which there is an adequate legal remedy against the defendants that are before the court."); *Buttinghausen v. Rappeport,* 131 N.J. Eq. 252, 24 A.2d 877, 880 (N.J.Ch.1942) ("[T]he legal remedy which may move equity to deny relief is a remedy against the same person from whom relief in equity is sought."). The Loiselles have no adequate remedy at law against CMG.

¶ 15 CMG next asserts, as a defense to the Loiselles' unjust enrichment claim, that there has been a "change of circumstances" so that it would be inequitable to require it to pay restitution. Specifically, it claims that, after receiving the $25,000 payment, it loaned an additional $21,000 to

Verderose and that, "[h]ad [it] not received the $25,000 deposit, Verderose would not have been permitted to enter into another Promissory Note with [CMG]."

¶ 16 This argument is based on § 142 of the Restatement, entitled "Change of Circumstances," which provides:

(1) The right of a person to restitution from another because of a benefit received is terminated or diminished if, after the receipt of the benefit, circumstances have so changed that it would be inequitable to require the other to make full restitution.

(2) Change of circumstances may be a defense or a partial defense if the conduct of the recipient was not tortious and he was no more at fault for his receipt, retention or dealing with the subject matter than was the claimant.

Under this Restatement section, "[a]ny change of circumstances which would cause or which would be likely thereafter to cause the recipient entire or partial loss if the claimant were to obtain full restitution, is such a change as prevents full restitution." *Id.* cmt. b.

¶ 17 As the Restatement also points out, when the money received by mistake is used for the expenses of a business, there is generally no change of circumstances sufficient for the defense and restitution is required. *Id.* The defense may be applicable, however, if the business expenses were incurred "because of the receipt of the money and the amount of such payment was of such size that[,] considering the financial condition of the payee[,] it would be inequitable to require repayment." *Id.*

¶ 18 Arizona appellate courts have applied Restatement of Restitution § 142 only once.[3] In *Capin v. S & H Packing Company,* 130 Ariz. 441, 441, 636 P.2d 1223, 1223 (App. 1981), S & H agreed to pay TVD, a trucking company, for each truckload of produce TVD

---

**2.** We note that the Restatement also provides that creditors generally owe no duty to make restitution if another mistakenly pays the creditor for the debts of a third person. *See* Restatement § 14(1). However, "this is not so if the third person has procured the mistake," *Industrial Indem. Co. v. Truax Truck Line, Inc.,* 45 F.3d 986, 990 (5th Cir.1995), as has occurred here.

**3.** Section 142 is mentioned in *Maricopa County v. Cities and Towns of Avondale,* 12 Ariz.App. 109, 113, 467 P.2d 949, 953 (1970), but is not applied in that case.

delivered to Arizona from a farm in Mexico. Initially, TVD did not bill S & H for deliveries rejected at U.S. Customs that TVD returned to Mexico but, beginning with the 1978–1979 growing season, it began to do so. *Id.* When S & H's president learned S & H had been billed for these returned loads, he deducted those amounts from TVD's final invoice. *Id.* at 442, 636 P.2d at 1224. TVD brought suit seeking payment for the full balance of its final invoice. *Id.* at 441, 636 P.2d at 1223.

¶ 19 This court affirmed the trial court's ruling in TVD's favor. Citing § 142, we explained:

> It is a firmly established general rule that money paid to another under the influence of a mistake in fact may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund. In order that there may be such a change of position as will defeat an action to recover the money paid by mistake, the change must be detrimental to the payee, material and irrevocable.

*Capin*, 130 Ariz. at 442, 636 P.2d at 1224 (*quoting Jonklaas v. Silverman*, 117 R.I. 691, 370 A.2d 1277, 1281 (1977)) (citations omitted). The court found TVD had relied in good faith on S & H's payments, it would not have continued to haul the rejected produce if S & H had promptly objected or refused to pay, and S & H was therefore estopped under § 142 from claiming a credit for the payments. *Id.* These same principles must be considered here.

¶ 20 A Colorado case provides a factual situation more analogous to the facts in this case. In *Commercial Factors of Denver v. Roche Constructors, Inc.*, 802 P.2d 1129, 1130 (Colo.Ct.App.1990), Roche was a general contractor. Roche's subcontractor took a $45,317 loan from Commercial and assigned to Commercial, as security, its right to payment under its contract with Roche. *Id.* Roche was aware of the assignment and made an initial payment to Commercial of $23,909. *Id.* Commercial then loaned an additional $10,528 to the subcontractor. *Id.* Roche paid Commercial another $26,323, but when the subcontractor failed to perform

under the contract with Roche, Roche ceased payments to Commercial. *Id.*

¶ 21 Roche apparently sought restitution from Commercial for the full amount of the payments it had made, $50,232. *Id.* The Colorado Court of Appeals found that Commercial, by making a further loan to the subcontractor, had changed its position and was not required to pay restitution for the amount of that further loan. *Id.* In evaluating whether a change of position precludes restitution, the court reasoned as follows:

> The decisive factor here in determining whether a change of position precludes a reimbursement of payments received is whether [Commercial] retained the benefit of the payments or was left in a worse position than if payment had been refused originally by Roche. If [Commercial] changed its position because of Roche's payments so that it no longer had possession of the money or was in a worse position than if Roche had refused to make that payment then the payee is exonerated from repayment, to the extent of such payment or payments.
>
> Here, the position of [Commercial] was detrimentally changed by the $10,528 [ ] it paid out on the basis of the payments received from Roche. Thus, we conclude that Roche is entitled to reimbursement of $50,232 [ ], the total sum of the two payments, minus $10,528 [ ], the subsequent loan amount.

*Id.* at 1130–31 (citation omitted).

¶ 22 Like Commercial in the Colorado case, CMG may have changed its position based on the payment it received from Loiselle when it loaned Verderose an additional $21,000. The Loiselles, like Roche in the Colorado case, are entitled to at least $4,000 of reimbursement—the difference between the $25,000 payment from Loiselle and the $21,000 loan CMG provided Verderose. But there are questions of fact concerning whether the change of circumstances defense in § 142 is available to CMG and, if so, the extent to which the defense protects CMG from paying the remaining $21,000 in restitution.

¶ 23 Specifically, there are questions whether CMG was more at fault than the Loiselles for its receipt of the money, *see supra* ¶ 16; whether requiring CMG to pay restitution would cause CMG either entire or partial loss, *see supra* ¶¶ 16, 21; whether CMG provided Verderose the $21,000 loan because it had received the $25,000 payment, *see supra* ¶¶ 17, 21; and whether the amount of the additional loan was so large it would be inequitable to require CMG to pay full restitution, *see supra* ¶¶ 16–17.[4] The trial court therefore erred in granting the Loiselles summary judgment on their entire unjust enrichment claim.

¶ 24 The Loiselles argue that, based on the comments to § 142, this defense should be unavailable to CMG. They cite the following portion of comment b: "Where money has been paid which the payee has used for the payment of debts incurred prior to its receipt, such payment of debts does not constitute a change of circumstances which would prevent restitution." Restatement § 142 cmt. b. In such a situation, requiring the recipient to pay restitution is equitable because it does not cause the recipient any net loss but merely returns him to the status quo. *See Federal Ins. Co. v. Smith*, 144 F.Supp.2d 507, 524–25 (E.D.Va.2001); *cf. Tyler v. Fireman's Fund Ins. Co.*, 255 Mont. 174, 841 P.2d 538, 541–42 (1992) ("change of circumstances" defense unavailable where recipient used mistakenly-received insurance proceeds to pay business debts).

¶ 25 Without further factual development, however, we cannot determine if this principle is applicable here. CMG asserts that, because it received the $25,000 payment, it loaned an additional $21,000 to Verderose. If its assertion is true and if CMG cannot easily recover against Verderose's estate, then an equitable determination must be made regarding whether CMG should be required to make full restitution to the Loiselles.

¶ 26 The Loiselles next assert the defense is unavailable here based on another portion of comment b to § 142, which provides:

> Where because of fraud or a basic mistake of fact, money intended for the principal is paid to an unauthorized agent who does not bind his principal by the receipt of the money, the principal is nevertheless under a duty of restitution if, without his knowledge, he is thereby benefited either by having it deposited to his account or mingled with his money or by its use for the payment of his debts.

Restatement § 142 cmt. b. This portion of comment b does not apply here because the $25, 000 was not "paid to an unauthorized agent"—rather, Loiselle deposited the money into CMG's account.

¶ 27 Additionally, that portion of the comment continues: "[T]he principal's duty of restitution is terminated or is diminished pro tanto" if, before he becomes aware of the facts, the agent withdraws all or part of the money or the money is stolen. Restatement § 142 cmt. b. Verderose, by procuring an additional $21,000 loan from CMG, may be in a position analogous to an agent who withdraws or steals part of the money. Therefore, CMG's duty of restitution may be terminated or diminished based on the change of circumstances defense as established in Restatement § 142.

¶ 28 Accordingly, we conclude that there are genuine issues of material fact to be resolved in determining if CMG has an equitable defense to the Loiselles' restitution claim. We agree, however, that the Loiselles are entitled to at least $4,000 in restitution, and we affirm the trial court's judgment in that amount. The Loiselles may be entitled to further restitution to the extent CMG is not protected by the equitable defense under § 142 of the Restatement. Upon making the factual determinations set forth above and any other relevant determinations, the trial

---

4. For CMG to successfully assert the change of circumstances defense, it must also show it has unsuccessfully attempted to recover this money from Verderose's estate or that it would be futile to attempt recovery. *See* M.L. Cross, Annotation, *What constitutes change of position by payee so as to preclude recovery of payment made under mistake,* 40 A.L.R.2d 997 § 3(a) (1955); *see also Capin,* 130 Ariz. at 442, 636 P.2d at 1224 (stating change of position must be irrevocable). CMG need not necessarily suffer the expense of bringing a suit against Verderose's estate, however. *See* 40 A.L.R.2d 997 § 3(a).

court will have broad discretion to fashion a suitable equitable remedy. *See City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, 395, ¶ 19, 983 P.2d 759, 764 (App.1999) ("In actions for equitable relief, we defer to the trial court's discretion in fashioning the remedy."); *see also New England Mut. Life Ins. Co. v. Hastings*, 733 F.Supp. 516, 519–20 (D.R.I.1990) (stating application of § 142 cannot be "mechanical or technical" but depends on unique facts of each case).

### Joint and Several Liability

¶ 29 The trial court found CMG and the Lineses are jointly and severally liable for the $25,000 restitution. CMG and the Lineses challenge this ruling, arguing the Loiselles have not established any legal basis for disregarding CMG's corporate entity and for holding the Lineses, CMG's owners, individually and personally liable. We agree that summary judgment should not have been granted in the Loiselles' favor on this issue.

¶ 30 "A basic axiom of corporate law is that a corporation will be treated as a separate entity unless there is sufficient reason to disregard the corporate form." *Standage v. Standage*, 147 Ariz. 473, 475, 711 P.2d 612, 614 (App.1985). As a separate entity, the personal assets of a corporate officer may not normally be reached to satisfy corporate liabilities. *Id.* at 476, 711 P.2d at 615. A corporate entity will be disregarded, and the corporate veil pierced, only if there is sufficient evidence that 1) the corporation is the "alter ego or business conduit of a person," *Dietel v. Day*, 16 Ariz.App. 206, 208, 492 P.2d 455, 457 (1972); and 2) disregarding the corporation's separate legal status is "necessary to prevent injustice or fraud." *State v. Angelo*, 166 Ariz. 24, 27, 800 P.2d 11, 14 (App. 1990).

¶ 31 The parties to the transaction in this case were Loiselle and CMG. Loiselle issued a check to CMG, not to the Lineses, and the check was deposited into CMG's account. The Loiselles have presented copies of a number of cancelled checks which may support an inference that CMG and the Lineses were disregarding the corporate entity of CMG. This evidence is insufficient, however, to support summary judgment in favor of the

Loiselles to the effect that the Lineses are individually liable for the amount of any restitution that may eventually be awarded to the Loiselles. We therefore vacate this portion of the summary judgment in favor of the Loiselles and remand for further factual determination.

### CONCLUSION

¶ 32 For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of the Loiselles on their unjust enrichment claim for $4,000, but we vacate the order pertaining to the remaining $21,000 and remand for further proceedings. We also vacate the trial court's order granting summary judgment in favor of the Loiselles on the issue of joint and several liability of the Lineses.

¶ 33 CMG and the Lineses have requested an award of attorneys' fees incurred on appeal under A.R.S. § 12–341.01 (Supp.2009). Without deciding whether this statute is applicable, in the exercise of our discretion we decline to award attorneys' fees to CMG and the Lineses. They are, however, entitled to taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and PHILIP HALL, Judge.