NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ORI EISEN, et al., *Plaintiffs/Appellants*,

*v.*

CLINTON COONFER, et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0529
FILED 2-16-2023

Appeal from the Superior Court in Maricopa County
No.  CV2019-002967
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

COUNSEL

Davidson & Funkhouser, PLLC, Scottsdale
By Frederick E. Davidson, Josh G. Funkhouser
*Counsel for Plaintiffs/Appellants*

Rose Law Group, PC, Scottsdale
By Logan V. Elia, Olen V. Lenets
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Peter B. Swann[1] delivered the decision of the court, in which Presiding Judge Maria Elena Cruz and Judge Angela K. Paton joined.

---

**S W A N N**, Judge:

**¶1**         Appellants, Ori and Mirit Eisen, as the Trustees of the Eisen Revocable Trust dated October 11, 2013 ("the Eisens"), appeal the superior court's dismissal of their breach of contract and unjust enrichment claims against defendant DACC, LLC ("DACC").  We affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**         This case arises from the default of a $100,000 loan funded by the Eisens.  The check funding the loan was made out to "Clint Coonfer," and a promissory note memorializing the loan recognizes Clinton Coonfer ("Clint") as the obligor.  The Eisens claim that Clint entered the loan on behalf of defendant DACC and that, therefore, DACC is liable on the note.

**¶3**         Defendant DACC, "Dayle Ann Coonfer Coffee," is a manager-managed LLC, of which Dayle Coonfer is the sole manager and member.  DACC engages in the coffee retail business, operating coffee shops in Arizona.  During the relevant period, Dayle's son, Clint, worked for DACC, assisting with research and development and other day-to-day operations.

**¶4**         In August 2017, Clint sought a loan from plaintiff Ori Eisen, a business acquaintance, to help expand DACC's business.  And on September 16, 2017, Ori wrote a check from the Eisen Revocable Trust payable to "Clint Coonfer" for $100,000, with the memo line stating "Biz

---

[1]         Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court.  He retired effective November 28, 2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2022-162.

Loan." Clint deposited the check into DACC's bank account and, thereafter, made most payments on the loan from DACC's account.

**¶5** A few months after issuing the check, Ori sent Clint a promissory note memorializing the loan's terms, which was retroactively dated and executed by both parties. The note set out the repayment terms and identified Clint as the obligor. It did not name or reference DACC and it did not set any limitations on the loan's use. The note did not include an integration clause.

**¶6** In December 2018, Clint defaulted on the loan. The Eisens filed a complaint against DACC and Clint, claiming breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. The Eisens obtained a default judgment against Clint for unjust enrichment and proceeded to a two-day bench trial on their claims against DACC.

**¶7** At trial, Ori testified that at the time he wrote the check funding the loan, he believed that Clint was acting for DACC and with the authority to do so. Ori stated that Clint had represented that DACC was the entity actually borrowing money. Additionally, Ori believed that Clint had unlimited authority to act for DACC because he had witnessed Clint previously execute documents relating to DACC's business as DACC's authorized agent.

**¶8** Regarding the loan's purpose, Ori testified that he issued the loan to help grow DACC's business, which was why he wrote "Biz Loan" on the check. He stated that he was not surprised the check funding the loan was deposited in DACC's account, nor that he received payment from DACC's account, because "[t]hat was the intent." When asked why he did not name DACC on the check, Ori testified that Clint asked him "to make it [out] that way."

**¶9** As for the promissory note, Ori testified that he first suggested naming DACC as an obligor in the note but wrote Clint's name instead after Clint asked him to do so. Ori stated that, "I didn't even think twice about it because I trusted him."

**¶10** Dayle also testified at trial. She stated that though DACC authorized Clint to take certain actions for DACC, she never authorized him to borrow money on behalf of DACC. Dayle testified that she authorized Clint to write checks from DACC's account, including the checks used to pay the Eisens, as wages for Clint's work for DACC. She

stated she did not know about the loan until Clint started to miss payments. Dayle never met Ori and never spoke with him concerning the loan.

**¶11**     Clint did not testify.

**¶12**     After the bench trial, the superior court determined that the parties intended that Clint be the sole obligor on the loan and that, consequently, DACC was not liable for its default. Additionally, because the Eisens extended the loan to Clint knowing the funds would be used to benefit DACC, the superior court determined there was no unjust enrichment. The court entered judgment in DACC's favor on all claims.

## DISCUSSION

I.     SUFFICIENT EVIDENCE SUPPORTS THE SUPERIOR COURT'S DETERMINATION THAT THE PLAINTIFFS INTENDED TO ENTER A LOAN AGREEMENT SOLELY WITH CLINTON COONFER.

**¶13**     On appeal, the Eisens argue that the record does not support the superior court's determination that the loan was made solely to Clint. The interpretation of a contract is a question of law that this court reviews de novo. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009).

   A.     The Superior Court Did Not Err by Determining the Contract Bound Only Clint.

      1.     Unambiguous Language

**¶14**     "[I]n Arizona, a court will attempt to enforce a contract according to the parties' intent." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993). A judge may consider extrinsic evidence to determine whether contract language is "reasonably susceptible" to an interpretation asserted by a party. *Id.* at 154. If the contract's language unambiguously expresses the parties' intent, however, "there is no need or room for construction or interpretation and a court may not resort thereto" and the court will give effect to the contract as written. *Grosvenor Holdings, L.C.*, 222 Ariz. at 593, ¶ 9 (citation omitted). Contract language is ambiguous "only when it can reasonably be construed to have more than one meaning." *In re Estate of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005).

**¶15**     The Eisens assert that, when negotiating and executing the loan, Clint and Ori intended that DACC be a party to the loan through Clint

as its agent.  However, the note's language is unambiguous.  It recognizes only Clint as an obligor.  It does not note his status as a supposed agent and does not name or reference DACC at all.  The note's language cannot reasonably be construed to bind DACC as a party.

### 2. Integration

**¶16** The Eisens further contend that Ori and Clint did not intend the promissory note to constitute a final expression of their agreement, suggesting that the court should look beyond the note's language to understand the parties' full agreement.  When a written contract is fully integrated, expressing the totality of the parties' agreement, a court is precluded from considering "antecedent understandings and negotiations . . . for the purpose of varying or contradicting the writing."  *Taylor*, 175 Ariz. at 152 (citation omitted).  Conversely, if a contract is not fully integrated, a court may look beyond the contract's language to understand the full agreement. *See id.*  We consider the circumstances surrounding the contract's creation to determine if it is fully integrated. *Anderson v. Preferred Stock Food Markets, Inc.*, 175 Ariz. 208, 210–11 (App. 1993).  And "[a] presumption exists that a contract complete on its face integrates the final intention of the parties." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 261 (App. 1983).

**¶17** Though the promissory note did not include an integration clause, an integration clause is simply one factor that may indicate whether full integration was intended. *See Anderson*, 175 Ariz. at 210–11.  Here, the note is complete on its face, unambiguously including all material terms of the loan, therefore raising the presumption that it is the parties' final intention.  Ori testified that he and Clint discussed the note's provisions, specifically negotiating who to name as obligor on the note.  Here, application of the presumption in favor of integration is particularly appropriate, because it would be a rare case in which either tools of interpretation or lack of integration could effect the addition of a nonsignatory as a party to a written agreement.  No evidence exists in this record to support such a result.

### 3. Effect of Clint's Default Judgment

**¶18** The Eisens also assert that the superior court improperly ignored the default judgment obtained against Clint, arguing that the admissions therein were binding against DACC.  All well-pleaded facts in a complaint are deemed admitted by a defendant against whom a default judgment is entered. *S. Ariz. Sch. for Boys, Inc. v. Chery*, 119 Ariz. 277, 281

(App. 1978). The Eisens argue that because DACC "proffered no testimony to overcome th[e] admissions" of the facts in the complaint, they became binding against DACC, citing *Clugston v. Moore*, 134 Ariz. 205, 207 (App. 1982), for support. But *Clugston* says the opposite, setting forth the general rule that "the default of one defendant, acting as an admission by him of the allegations of the petition, does not operate as an admission of the allegations by a defendant who is contesting the allegations." *Id.* The weight given to the uncontradicted evidence of an interested party is a matter within the superior court's discretion. *City of Tucson v. Apache Motors*, 74 Ariz. 98, 107 (1952). The superior court had discretion to give little evidentiary value to Clint's default admissions.

###### B. The Superior Court Did Not Err by Determining Clint Did Not Bind DACC as Its Agent.

**¶19** The Eisens argue that Clint had actual or apparent authority to act for DACC, and that because DACC was disclosed as a principal during the loan negotiations, DACC is bound by the note even though DACC's name is not on the note and no one purported to sign on behalf of DACC. According to the Restatement (Second) of Agency § 149, a disclosed principal is liable on an authorized written contract even if "it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument or by the agreement of the parties." *See also Krumtum v. Burr*, 15 Ariz. App. 214, 215–16 (1971) (applying § 149).

**¶20** Actual authority is established through an agreement, expressed or implied, between the principal and the agent. *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 597, ¶ 29 (App. 2007). Here, the record at trial supported the superior court's finding that "Clint was not authorized to borrow money." Though Clint's general relationship with DACC was disclosed, there is sufficient evidence in the record from which the superior court could properly find that Clint did not hold himself out as an agent for DACC and that DACC was not a disclosed *principal.* In these circumstances, § 149 does not work to bind DACC to the contract.

**¶21** Implied actual authority must be inferred "based on facts for which the principal is responsible." *Canyon State Canners, Inc. v. Hooks*, 74 Ariz. 70, 73 (1952) (citation omitted). We find no evidence of any facts for which DACC was responsible to suggest that DACC authorized Clint to borrow money on its behalf. Therefore, Clint lacked implied actual authority as well.

**¶22** Clint also lacked apparent authority to borrow money on behalf of DACC. Apparent authority arises when a principal's conduct "allows a third party reasonably to conclude that an agent is authorized to make certain representations or act in a particular way." *Miller v. Mason-McDuffie Co. of S. Cal.*, 153 Ariz. 585, 589 (1987). And actual authority to enter one type of contract "does not infer [sic] authority to enter a contract of an entirely different nature." *Hudlow v. Am. Estate Life Ins. Co.*, 22 Ariz. App. 246, 248 (1974). A party seeking to bind a principal by the acts of his agent has a duty to "stop, look and listen[ ]" before contracting with an agent "where authority has not been established." *Phx. W. Holding Corp. v. Gleeson*, 18 Ariz. App. 60, 69 (1972).

**¶23** Though Ori knew that Clint had some authority to sign documents for DACC, this was not enough to conclude that Clint had authority to borrow money on DACC's behalf—a contract of an entirely different nature. Ori did not rely on any other facts that would allow him reasonably to conclude that Clint had authority to borrow money and bind DACC. In fact, Ori never spoke with or met Dayle at all. Ori did not "stop, look and listen" before contracting with Clint when his authority to borrow for DACC had not been established. Clint lacked apparent authority to enter the loan on DACC's behalf.

**¶24** Section 149 of the Restatement (Second) of Agency does not apply in these circumstances.

> C. The Superior Court Did Not Err by Refusing To Reform the Contract.

**¶25** The Eisens contend that the superior court erred by not reforming the note to accurately reflect the intended parties. We have affirmed the superior court's determination that the intended parties were the Eisens and Clint. We therefore perceive no error in the court's refusal to reform the contract to reflect otherwise.

**¶26** In summary, because the contract is fully integrated, the note unambiguously names only Clint as an obligor, and Clint did not enter the loan under DACC's authority, the evidence sufficiently supports the superior court's determination that the note binds only Clint and that DACC cannot be held liable on it.

II.    THE SUPERIOR COURT DID NOT ERR IN ITS DENIAL OF PLAINTIFFS' UNJUST ENRICHMENT CLAIM.

¶27    Assuming DACC was not a party to the note, the Eisens argue that DACC is nevertheless liable for the debt under the theory of unjust enrichment.  A plaintiff claiming unjust enrichment must establish five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 226 Ariz. 242, 251 (App. 2011).  The Eisens fail to establish both the connection element and the justification element.

¶28    First, the Eisens fail to establish a connection between any enrichment received by DACC and the impoverishment experienced by the Eisens.  The Eisens loaned money to Clint, not DACC.  *See supra* Section I.  The Eisens experienced impoverishment because Clint did not pay back the loan.  Any enrichment DACC may have received is unconnected to Clint's decision or inability to meet his repayment obligations—in this regard, DACC stands in the same position as a vendor or any other person to whom Clint might have chosen to give the money.

¶29    Second, the Eisens fail to establish a lack of justification for the enrichment and impoverishment.  Ori testified that he intended for the loan to assist Clint with DACC's business.  Yet, he agreed to only bind Clint in the note, even after contemplating whether to instead bind DACC.  The Eisens intended that Clint use the loan to benefit DACC without holding DACC liable on the loan, and thus any enrichment DACC received was justified, despite the impoverishment experienced by the Eisens.

¶30    The Eisens argue that this analysis confers third-party beneficiary rights on DACC, which can only be done expressly in the contract and which the parties did not do here.  *See Norton v. First Fed. Sav.*, 128 Ariz. 176, 178 (1981).  The concept of third-party beneficiary rights is inapposite here.  DACC is not seeking to recover under the contract as a third-party beneficiary.

¶31    Lastly, the Eisens argue that the above analysis, finding justification for any enrichment derived by DACC from Clint's loan, contradicts this court's determinations in *Loiselle v. Cosas Management Group, LLC*, 224 Ariz. 207 (App. 2010).  In that case, we noted that a party may receive restitution pursuant to an unjust enrichment claim in which a benefit was conferred to a third party based on a mistake.  *Id.* at 210, ¶ 11.

But *Loiselle* involved a situation in which the lender, based on an individual's misrepresentations, issued a check directly to the third party and expected the third party to repay it. *Id.* at 209, ¶ 3. In other words, in *Loiselle*, there was a connection between the impoverishment and the enrichment. Here, there is no such connection, as any benefit conferred onto DACC, the third party, was conferred by Clint, not the Eisens. The case for restitution here is not analogous to that in *Loiselle*.

**CONCLUSION**

¶32        For the reasons set forth above, we affirm. As the prevailing party, we award DACC its costs under A.R.S. § 12-341, and, in our discretion, reasonable attorney's fees under A.R.S. § 12-341.01, upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA