NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SUSIE CHARBEL, *Plaintiff/Appellee*,

*v.*

ROBERT JOYCE, et al., *Defendants/Appellants*.

No. 1 CA-CV 25-0163

FILED 10-29-2025

Appeal from the Superior Court in Maricopa County
No. CV2021-094719
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Bailey Law Firm, PLLC, Tempe
By Jenna C. Bailey, Allison L. Rains
*Counsel for Plaintiff/Appellee*

Lorona Mead PLC, Phoenix
By Frank R. Mead
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1 Defendants Robert Joyce and Ann Joyce appeal from the superior court's unjust enrichment judgment for the plaintiff Susie Charbel. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Charbel is a criminal law attorney and part-time real estate investor. She and the Joyces were family friends and often socialized together.

¶3 In September 2020, Charbel attended a get-together at the Joyces' house and heard Robert say that he had a residential property in northwest Phoenix ("Property") that he was trying to sell. Charbel expressed interest in buying the Property. The Property needed to be remodeled and had a long-term tenant whom Robert was reluctant to evict formally. After the discussion, Charbel and Robert agreed that Charbel would purchase the Property for $155,000 upon the tenant's eviction. Robert said he would inform the tenant about the sale and that it would be at least 90 days before the sale could take place, as he did not want to ask the tenant to leave during the end-of-year holidays.

¶4 In April 2020, the Joyces transferred the Property to a limited liability company ("Property LLC") for estate planning and asset protection purposes. The sole member of the Property LLC is the Joyce Family Living Trust. The Joyces are the trustees of the trust. Charbel formed CBS AZ Group, LLC ("CBS"), with two other members who agreed to help buy the Property, remodel it, and then resell it. The expectation was that CBS would purchase the Property from the Property LLC.

¶5 After the New Year in 2021, Charbel and Robert agreed that Charbel would remove the tenant so the sale could proceed. Robert gave Charbel the tenant's contact information, and Charbel began working directly with the tenant about the move. On February 2, 2021, Charbel told the tenant that she had to vacate the property by March 12, 2021.

**¶6**    Charbel then spent about 40 hours following up with the tenant, including helping her locate a new home and offering her financial incentives to move out of the Property. In the meantime, Robert made plans to refinance another property he owned using the expected proceeds from the Property sale. Because the refinance was scheduled to fund on March 12, he needed the sale of the Property to close that same day. Robert did not tell Charbel that the March 12 date was material to their agreement.

**¶7**    On March 1, the tenant informed Charbel that she had found a new home but was unsure she could vacate the Property by March 12. Unaware of the significance of that date to Robert, Charbel told the tenant she could have more time to vacate the property. Charbel relayed that information to Robert on March 10 and insisted she did not want to close until after the tenant had left the Property. Robert did not inform Charbel of the importance of the March 12 date or that the deal would be off if she did not close on that date.

**¶8**    Instead, Robert spoke to other prospective buyers and agreed to sell the Property to another buyer for $185,000, $30,000 more than the agreement with Charbel. The purchase documents for that sale were signed on March 11 and 12, 2021, and the sale closed on March 18, 2021. At the Joyces' direction, the purchase money was paid directly to them and not to the Property LLC.

**¶9**    Charbel sued the Joyces, alleging, as relevant, that the Joyces were unjustly enriched because she had worked to handle issues with the tenant and secure her departure. Charbel claimed that her efforts increased the value of the Property, and the Joyces benefited from that increase because the proceeds from the Property's sale to another purchaser went directly to them.

**¶10**    After a bench trial, the superior court awarded Charbel $10,000 and her attorney's fees and costs. The Joyces moved for a new trial and to amend the resulting judgment, arguing that the court's findings were not supported by the evidence or Arizona law. The court denied the motions.

**¶11**    The Joyces appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1) and (A)(5)(a).

## DISCUSSION

**¶12**    The Joyces argue the judgment conflicts with Arizona law because (1) CBS—not Charbel—was the proper plaintiff; (2) the Property

LLC—not the Joyces—was the proper defendant; and (3) the superior court calculated damages improperly.

¶13        We view the facts in the light most favorable to upholding the judgment, *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 417, ¶ 2 (App. 2010), and will accept the court's factual findings unless they are clearly erroneous or not supported by substantial evidence, *Davis v. Zlatos*, 211 Ariz. 519, 523-24, ¶ 18 (App. 2005). We review the superior court's conclusions of law *de novo. Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52, ¶ 12 (App. 2009).

**A.        Charbel and the Joyces Were the Proper Parties.**

¶14        The Joyces contend that the superior court erred because neither they nor Charbel were the proper parties.

¶15        A claim for unjust enrichment is one in equity. *W. Corr. Grp., Inc. v. Tierney*, 208 Ariz. 583, 590, ¶ 27 (App. 2004). Thus, the court is not "bound by the common law forms of action," but may fashion a remedy wherever circumstances and equity require. *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53 (1985).

¶16        "A person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution and Unjust Enrichment ("Restatement") § 1 (2011);[1] *see also Murdock-Bryant*, 146 Ariz. at 53. "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., N.A.*, 202 Ariz. 535, 541, ¶ 31 (App. 2002). An example of unjust enrichment is where one party makes expenditures to add value to property under the reasonable expectation that they will acquire the property, and because that expectation is frustrated, another person becomes the unintended beneficiary of the party's expenditure. Restatement § 27, cmt. d, Illus. 4 (A purchaser who improves property in anticipation of purchase based on an unenforceable oral contract that the vendor repudiates is entitled to restitution of the benefit conferred.).

¶17        Arizona law requires a plaintiff claiming unjust enrichment to establish five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment[,] and (5) the absence of any remedy at

---

[1]        The Restatement treats the terms "restitution" and "unjust enrichment" synonymously, although it notes that they are not necessarily correlatives. Restatement § 1 cmt. c.

law." *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 210, ¶ 9 (App. 2010). We consider whether Charbel and the Joyces were the proper parties in this case, with a focus on the principles of enrichment and impoverishment.

### 1.    Charbel Was the Proper Plaintiff.

**¶18**       The superior court found that Charbel alone—not CBS or its other members—conferred a benefit or suffered an impoverishment because of Charbel's efforts for the Property. Thus, it found that she was a proper party to the unjust enrichment claim and that CBS was not a required party. The evidence supports this finding.

**¶19**       Charbel estimated that she spent about 40 hours on her work with the Property. The trial evidence also showed that the Property would be more marketable without the unwanted tenant, and Charbel's efforts to remove the tenant contributed to the Property's value increasing from $155,000 to $185,000. Neither of the other members of CBS contributed any effort to the purchase of the Property or the removal of the tenant.

**¶20**       The Joyces counter that Charbel's efforts were not hers individually because she was a member of CBS and acted on its behalf. As a result, they contend that any claim for unjust enrichment belongs to CBS and that it must prosecute it as the real party in interest. *See* Ariz. R. Civ. P. 17(b)(1) (An action must be prosecuted in the name of the real party-in-interest.).

**¶21**       CBS has no claim for unjust enrichment because it did not suffer any impoverishment in connection with the Property. *See Loiselle*, 224 Ariz. at 210, ¶ 9. Charbel took the time she spent removing the tenant from the Property away from her other work as an attorney, for which she billed $350 to $450 per hour. There was no evidence that CBS paid Charbel for this time or that it otherwise suffered an impoverishment because of Charbel's work on the Property. On the other hand, the trial evidence showed that Charbel sacrificed other income to spend time increasing the property's value.

**¶22**       We reject the Joyces' argument that, because Charbel was a member of CBS, all efforts she made in anticipation of CBS's purchase of the Property belonged to CBS and that it was the real party-in-interest. *Murdock-Bryant*, 146 Ariz. at 53 (In considering an unjust enrichment claim, the court is not "bound by the common law forms of action" but may fashion a remedy wherever circumstances and equity require.); *Karol v. Bd. of Ed. Trs., Florence Unified Sch. Dist. No. One*, 122 Ariz. 95, 97 (1979)

("[E]quity gives little weight to technicalities [because] it looks to substance rather than form.").

**¶23** The superior court did not err by finding that Charbel was a proper party to the unjust enrichment claim and CBS was not a required party.

## 2. The Joyces Were the Proper Defendants.

**¶24** The superior court ruled that the Joyces "directly, personally, and inextricably" benefited from Charbel's efforts to remove the tenant from the Property and were properly named as defendants for the unjust enrichment claim. The Joyces argue that this ruling was incorrect because Charbel did not plead or prove that the Property was their alter ego.

**¶25** Although the Property LLC owned the property, it did not receive the proceeds of the property sale. Rather, the Joyces told the title company to distribute the proceeds directly to them after closing. As a result, the Joyces—not the Property LLC—benefited from the increased property value that arose, in part, from Charbel's efforts to remove the tenant. Because Charbel's work enriched the Joyces, they are subject to liability for restitution. *See* Restatement § 1.

**¶26** The Joyces also argue that this is somehow an improper evasion of the legal protections afforded to limited liability company members under A.R.S. § 29-3304(A). That statute provides that a limited liability company's debt, obligation, or other liability belongs only to the company, and no member or manager is personally liable for it simply because of their member or manager role. A.R.S. § 29-3304(A). And, they add, Charbel did not seek to disregard the Property LLC's form in seeking relief. *Loiselle*, 224 Ariz. at 214, ¶ 30.

**¶27** As discussed, because the Joyces benefited from Charbel's work, they are the proper defendants in her unjust enrichment action. *See* Restatement § 1; *Murdock-Bryant*, 146 Ariz. at 53-54 (To determine whether restitution is appropriate, the court looks at whether a party received a benefit that it would be unjust to allow them to retain.). And, again, the Property LLC received no benefit from Charbel. *See* Restatement § 1; *Murdock-Bryant*, 146 Ariz. at 53-54; *see also Span v. Maricopa County Treasurer*, 246 Ariz. 222, 227, ¶ 16 (App. 2019) (Unjust enrichment is unavailable when the defendant has not retained a benefit.). Charbel's action against the Joyces did not try to hold them responsible for the Property LLC's debt, obligation, or other liability, and it was therefore unnecessary to disregard the Property LLC's form in awarding her unjust enrichment relief.

¶28        This court's decision in *Loiselle* is not to the contrary. In that case, Loiselle issued a check and authorized its deposit into the bank account of Cosas Management Group, LLC ("CMG"), believing he was lending the money to CMG. *Loiselle*, 224 Ariz. at 209, ¶ 3. In fact, Loiselle's employee had fraudulently induced him to deposit the money in CMG's account so it could be used to reduce the employee's outstanding debt to CMG. *Id.* at 209, ¶ 4. When Loiselle discovered the fraud and CMG refused to return the money, Loiselle brought a claim against CMG and its members, the Lines, for unjust enrichment. *Id.* at 209, ¶¶ 5-6. The superior court granted summary judgment for Loiselle. *Id.* at 209-10, ¶ 7.

¶29        Relying on the Restatement, we determined that CMG could be liable for unjust enrichment, but we remanded the case for further proceedings over the amount of restitution to be awarded. *Loiselle,* 224 Ariz. at 211, 213-14, ¶¶ 13, 28. We, however, reversed the superior court's determination that the Lines could be liable for any restitution to Loiselle. *Loiselle*, 224 Ariz. at 214, ¶ 31. We noted that "Loiselle issued a check to CMG, not to the Lineses, and the check was deposited into CMG's account." *Id.* at 214, ¶ 31. We concluded that Loiselle had not established that the Lines were individually liable for any restitution. *Id*. Loiselle had also shown no evidence that the court should disregard CMG's separate legal status and require the Lines to satisfy CMG's liability under an alter ego theory. *Id.* at 214, ¶¶ 29-31.

¶30        In this case, the Property LLC did not receive a benefit from Charbel and therefore does not have to make restitution that could be imputed to the Joyces by disregarding the corporate form. *See Span,* 246 Ariz. at 227, ¶ 16 (Unjust enrichment is unavailable when the defendant has not retained a benefit.). Rather, the Joyces—as the direct beneficiaries of Charbel's work on the Property—are the proper parties. *See* Restatement § 1. So there was no need for Charbel to ask that the court disregard the Property LLC's form.[2]

---

[2]        The Joyces cite unpublished decisions in *Barbano v. Brown*, 1 CA-CV 23-0091, 2023 WL 6896980 (Ariz. App. Oct. 19, 2023) (mem. decision) and *Estrada v. Figari*, 1 CA-CV 14-0364, 2015 WL 3617902 (Ariz. App. June 9, 2015) (mem. decision). Those cases address when the corporate form can be ignored. Because there is no need to do so here, the cases have no application.

¶31 The superior court did not err by finding that the Joyces were the proper parties and could be held liable to Charbel for unjust enrichment.

## B. The Damages Calculation Was Within the Superior Court's Discretion.

¶32 Finally, the Joyces argue that the superior court erred by awarding damages to Charbel based on her attorney billable rate, rather than the hourly rate of a property manager. We review the court's damage award for an abuse of discretion. *Loiselle*, 224 Ariz. at 210, ¶ 8 ("Fashioning an equitable remedy is within the trial court's discretion, and it will not be disturbed on appeal absent an abuse thereof.").

¶33 The evidence showed that Charbel's efforts to remove the tenant contributed to the Property's increased value. The superior court found, however, that it would be unjust to require the Joyces to pay restitution of the full $30,000 amount because some of the increase in value was due to market forces. It therefore awarded Charbel the value of her time spent removing the tenant. It determined that the amount was between $14,000 (the value of her services based on her $350-per-hour billable rate as an attorney) and $900 (the value of her services based on the hourly rate charged by a property manager), and awarded her $10,000. The court explained that this award considered the likelihood that Charbel exercised some legal and professional judgment in evaluating the options available to remove the tenant.

¶34 The Joyces argue that the court erred by adopting this blended hourly rate because a real estate property manager could have provided the same services for less than $900.

¶35 Restitution can be measured by the amount of the claimant's impoverishment or the value of the enrichment to the other party. Restatement § 27 cmt. c; Restatement § 52. When the defendant bears responsibility for the collapse of the transaction, "the enrichment of [that defendant] will be measured in a way that protects the claimant against loss." Restatement § 27 cmt. c. Accordingly, it was within the superior court's discretion to award Charbel the cost of her services (i.e., the amount she was impoverished by her work) as restitution, even if that amount were greater than the value of the benefit to the Joyces. *See Loiselle*, 224 Ariz. at 210, ¶ 8. We find no error.

## CONCLUSION

**¶36**      We affirm.

**¶37**      Both parties request an award of costs and attorney's fees on appeal, citing A.R.S. §§ 12-341 and -341.01. Because the Joyces are not the successful party on appeal, they are not entitled to an award of costs or attorney's fees. A.R.S. §§ 12-341, -341.01. In the exercise of our discretion, we award Charbel her reasonable attorney's fees under § 12-341.01 and costs under § 12-341 upon compliance with Arizona Rule of Civil Appellate Procedure 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR